UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.

★ FEB 2 4 2006 ★

BROOKLYN OFFICE

JEFFREY YOUNG,

                 **Petitioner,**

v.

M. P. MCGINNIS, SUPERINTENDENT OF
SOUTHPORT CORRECTIONAL FACILITY,

                 **Respondent.**

No.98-CV-281 (JBW)

MEMORANDUM, ORDER
AND JUDGMENT

Appearances:

For Petitioner:

        Donna Newman, Esq.
        121 West 27th Street, Suite 1103
        New York, NY 10001

For Respondent:

        District Attorney of Kings County
        350 Jay Street
        Brooklyn, NY 11201
        By:    Caroline D. Donhauser, Esq.

JACK B. WEINSTEIN, Senior District Judge:

<u>Table of Contents</u>

I.     Introduction.................................................................................................................3

II.    Evidence in Two Murders..........................................................................................4

III.   Briefs in Two Cases....................................................................................................5

IV.   Hearing.......................................................................................................................6

V.    Booker Murder............................................................................................................7



VI.     Graham Murder.................................................................................................................14

VII.    Summary of Petitioner's Claims in Two Murders.............................................................26

VIII.   Analysis of Contentions in Booker Murder Case.............................................................28

    A.  Failure to Instruct on Need for Accomplice Corroboration.........................................28

    B.  Limiting Cross-Examination.......................................................................................35

    C.  Prior Uncharged Crimes and Bad Acts; Admissions Instructions; Prosecutor's
        Summation.................................................................................................................41

            1. Evidence of Another Homicide.........................................................................42

            2. Threats Against Witness..................................................................................43

            3. Other Evidence of Prior Bad Acts or Uncharged Crimes..................................45

            4. Charge............................................................................................................45

            5. Prosecutor's Summation..................................................................................46

    D.  Proof Beyond a Reasonable Doubt of Inculpatory Statements...................................48

    E.  Insufficient Evidence.................................................................................................56

    F.  False Testimony.........................................................................................................59

    G.  Inadequacy of Trial Counsel: Alibi...........................................................................60

    H.  Other Possible Claims...............................................................................................65

IX. Analysis of Contentions in Graham Murder Case...............................................................65

    A.  Uncharged Robbery Evidence to Prove Motive.........................................................65

    B.  Prejudicial Details of Uncharged Crimes...................................................................69

    C.  Ineffective Assistance of Trial Attorney....................................................................76

            1. General Competence........................................................................................77

            2. Argument Against Introduction of Uncharged Crime Evidence.......................77

        3. Strategy.......................................................................................................78

        4. Failure to Move to Strike Testimony Respecting Prior Incarceration...............79

        5. Failure to Request Curative Instructions..........................................................79

        6. Waiver as to Uncharged Crimes.......................................................................80

        7. Failure to Cross-Examine.................................................................................80

        8. Failure to Challenge Inadequate Police Investigation.......................................81

        9. Failure to Investigate Claim Another Person was Perpetrator...........................83

        10. Failure to Prepare and Consult with Petitioner...................................................83

    D.  *Rosario and Brady* Failures.......................................................................................85

        1. Exhibit A............................................................................................................86

        2. Exhibit E............................................................................................................90

        3. Exhibit F............................................................................................................91

    E.  Ineffective Appellate Counsel.....................................................................................93

        1. Denial of Right to Testify Before Grand Jury....................................................95

        2. Failure to Cross-Examine Witnesses Using Grand Jury Testimony.................97

        3. Failure to Utilize Phantom Murderer Theory......................................................98

    F.  Other Possible Claims.................................................................................................99

X.  Conclusion.........................................................................................................................99

## I.    Introduction

Petitioner is currently incarcerated pursuant to his judgments of conviction in two

Brooklyn homicide cases—the murder of Andre Booker, Kings County Indictment Number

8457/89, and the murder of Calvert "Bobby" Graham, Kings County Indictment Number

6163/88.

In 1998 petitioner filed in this court separate *pro se* applications for a writ of habeas corpus in each case. The petition in the Booker murder case was assigned the case number 98-CV-89. The petition in the Graham murder case was assigned the case number 98-CV-281. Because the state trial defense counsel (in part) and respondent were the same in both cases, and the evidence in the state proceedings overlapped, on October 14, 1999 this court ordered these two *habeas* cases consolidated under one case number, 98-CV-281.

In 1999 this court assigned Harry C. Batchelder, Jr., Esq., and Tracy W. Young, Esq., to represent petitioner on his habeas applications. Mr. Batchelder and Ms. Young filed briefs and supporting materials on petitioner's behalf. With funds provided by this court, they investigated petitioner's claims. Mr. Batchelder and Ms. Young also filed papers on petitioner's behalf in state court in an effort to exhaust petitioner's claims. After exhaustion in state court, this court relieved Mr. Batchelder and Ms. Young of their assignment.

On May 16, 2005 petitioner, pro se, filed an amended *habeas* application in this court. This court appointed Donna R. Newman, Esq., to represent petitioner. Ms. Newman filed a Supplemental Brief dated September 7, 2005 on petitioner's behalf.

On November 18, 2005, as requested by this court, respondent filed a comprehensive affidavit and brief on both homicides. The present memorandum deals first with the Booker murder and next with the Graham murder.


## II.    Evidence in Two Murders

A detailed analysis of the evidence in both cases need not now be rehearsed. It is adequately and fairly set forth in respondent's brief of November 18, 2005 at pages 1-29 for the

Booker case and pages 137-144 for the Graham case.


**III.    Briefs in Two Cases**

In addition to the various pro se communications from petitioner, and the record and briefs in the state proceedings, this court has relied on respondent's comprehensive brief dated November 18, 2005 with affidavit and extensive appendices; the supplemental brief of petitioner's counsel Donna R. Newman, dated September 7, 2005 (covering primarily the Booker murder, 8457/89, which occurred in Nassau County), which relies in part on a brief prepared by petitioner's former attorneys Harry C. Batchelder, Jr. and Tracy W. Young; a supplemental memorandum of law dated July 16, 1999 and filed on July 26, 1999 by attorneys Batchelder and Young (covering the Graham murder, which occurred in Brooklyn); a pro se memorandum of law filed January 15, 1998 (covering the Graham murder); a second supplemental memorandum of law by attorneys Batchelder and Young dated March 21, 2000 and filed March 24, 2000 (covering the Graham murder); a reply memorandum of law by attorneys Batchelder and Young dated October 8, 1999 and filed October 13, 1999 (covering the Graham murder); affidavits of attorney Newman and others filed by attorneys Batchelder and Young on March 28, 2000 (dealing with the Graham murder); and the pro se habeas corpus proceedings upon the completion of the state appellate process, with extensive exhibits filed May 16, 2005 (dealing with the Graham murder). The briefs were all excellent and useful. All the other documents in the file have been considered.

## IV.    Hearing

A final evidentiary hearing was conducted in this court on January 24, 2006.  Counsel were ordered to produce any state trial or appellate counsel who had evidence bearing on any claim of lack of adequacy of counsel in state court.  Issues raised by petitioner in the Graham murder and the Booker murder were explored with the parties.  They were free to put on any witnesses and to produce any relevant documents.  Petitioner was present by telephone.

Leo Kimmel, Esq., a highly experienced criminal defense attorney, testified.  He had represented petitioner in the first Graham murder trial, where the judgment for the people was reversed, and in the Booker case.  While his memory of the trial was limited, he was a candid and credible witness.

He was clear on the point that petitioner was aware of, and participated in, the decision not to pursue at trial the scenario of an alternate murderer.  It is apparent from his testimony that he used a competent investigator in running down possible leads and in preparing for trial.  There is every reason to believe that his decision to eschew the phantom-murderer defense was made after conferring with petitioner and for good strategic reasons.  *See* Part IX.C.9, *infra*.

Susan Feathers, Esq. was appellate counsel in the Graham murder.  She testified by telephone.  She was an experienced Legal Aid appellate counsel.  Her testimony confirmed the evidence of her fine brief that the direct appeal was well conducted.  While her testimony was unnecessary, there was no reason to find her work less than satisfactory.  Her strategic decisions on appeal were sound, as indicated in Part IX.E., *infra*.

Edna Schwartz, Esq. represented petitioner in the Booker murder.  She testified that she had a fairly clear recollection of the trial.  She had worked for a substantial number of years as a trial attorney for Legal Aid on the most serious and complex cases.  She was entirely credible.

The main criticism petitioner had of Ms. Schwartz was that she did not press a possible alibi defense—that petitioner was at a family birthday party at the time of the murder. She had interviewed the possible witnesses and was not comfortable with their credibility and their possible testimony. Her strategic reason for not using this testimony was fully explained and is justifiable on a number of grounds, including that she preferred to have the jury focus on the lack of credibility of the chief witness against petitioner rather than on the dubious alibi. *See* Part VIII.G., *infra.*

Her professional choices in this and other respects were sound. It is apparent that her lack of enthusiasm for the alibi was not due to lethargy since she had filed an alibi notice and interviewed the possible witnesses.

Both Mr. Kimmel testified and Ms. Schwartz testified that petitioner was an alert and active participant in his trials with a good grasp of the law and facts.

Ms. Schwartz testified truthfully that while she had advised petitioner against testifying, she did not prevent him from doing so, but made it clear that the decision was petitioner's. *See* Part VIII.G., *infra.*

Petitioner himself testified. He was not a credible witness. He lied. He added nothing to his case.

V.  **Booker Murder**

The evidence demonstrated that on May 6, 1987, petitioner, who was staying at his mother's house in Elmont, Nassau County, Long Island, lured his friend, Andre Booker, down to the basement of that house. There, assisted by his brother, Enrico Young, he bound Booker's arms, kicked him in the mouth, wound a rope around his neck, and strangled him to death.

7

Petitioner murdered Booker because he feared that Booker might get arrested and implicate petitioner in a homicide that they had committed together in Brooklyn approximately three weeks earlier.

Petitioner and his brother wrapped Booker's dead body in some plastic, drove to a garbage dump near Linden Boulevard in Brooklyn, and disposed of the corpse. Booker's body was found the following day.

On September 25, 1987, petitioner's girlfriend, Marie Somie, who arguably had deliberately assisted in the murder as an accomplice and was present in the Elmont house when the crime occurred, went to the police and identified petitioner as Booker's killer. Later Somie implicated Enrico Young, petitioner's brother, as an accomplice in the killing.

For this crime, petitioner was charged, under Kings County Indictment Number 8459/87, with Murder in the Second Degree, a violation of New York Penal Law Section 125.25(1).

Petitioner was originally tried in March of 1989. He was represented by Leo Kimmel, Esq. Petitioner was convicted of murder and sentenced on April 25, 1989. That conviction was reversed on appeal. Petitioner was then retried in 1993. At the retrial, petitioner was represented by The Legal Aid Society.

At the second jury trial, petitioner was convicted of Murder in the Second Degree. On June 2, 1993, he was sentenced to a prison term of twenty-five years to life.

Prior to perfecting his direct appeal from his judgment of conviction, petitioner moved, by papers dated August 25, 1995, to vacate his judgment of conviction pursuant to Section 440.10 of the New York Criminal Procedure Law ("C.P.L. § 440.10"). On petitioner's motion, as at trial and on his direct appeal, petitioner was represented by attorneys of The Legal Aid Society—Edna Schwartz and Mitchell Briskey. In his motion, petitioner claimed that the State,

8

in violation of the *Rosario* rule, had failed to disclose to petitioner at trial a recorded statement of prosecution witness Marie Somie. *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, *cert. denied*, 368 U.S. 866, 82 S. Ct. 117 (1961), *codified at* N.Y. Crim. Proc. Law §§ 240.44(1), 240.45(1)(a). Petitioner attached to his motion, as Petitioner's Exhibit B, a copy of the document, a Homicide Bureau Information Sheet, which had allegedly been in the State's possession at trial and withheld from petitioner. Petitioner's August 1995 C.P.L. § 440.10 motion, which challenged his judgment of conviction for the Booker murder under Kings County Indictment Number 8459/87, incorporated by reference a C.P.L. § 440.10 motion, dated July 1994, in which petitioner challenged his judgment of conviction for the Graham murder under Kings County Indictment Number 6163/88. Opposing the motion, the State asserted that the document had never been in the State's possession, and was not, in fact, genuine.

Following a hearing in Supreme Court, Kings County, the court found petitioner's hearing testimony unworthy of belief, credited the hearing testimony of the State's witness, A.D.A. Melanie Marmer, and determined that the alleged Homicide Bureau Information Sheet was a "forged and non-authentic document which was never withheld from petitioner at any time as it never existed until fraudulently produced." *See* September 19, 1996 Memorandum Decision and Order at 2-3. (The Batchelder-Young brief on petitioner's behalf did not contest this finding of fraud.) The court denied petitioner's C.P.L. § 440.10 motion to vacate his judgment of conviction for the Booker murder.

While his C.P.L. § 440.10 motion was pending, petitioner filed his brief on direct appeal from his judgment of conviction. Petitioner raised the following claims: *First*, his due process right was violated because the evidence was legally insufficient in light of the court's charge to the jury that it must find, beyond a reasonable doubt, that petitioner strangled Andre Booker in

9

the County of Kings. *Second*, citing the Fourteenth Amendment in the point heading of his brief he claimed that he was entitled to a new trial, because defense counsel had requested an accomplice corroboration charge with regard to Marie Somie and the court had erred in refusing that request. *Third*, he claimed that his Confrontation Clause right was violated because the court had improperly curtailed his cross-examination of Marie Somie. *Fourth*, he argued that his due process right was violated because the court had improperly admitted evidence of petitioner's uncharged crimes and bad acts and because the prosecutor had delivered an improper summation. *Fifth*, he contended that his due process right was violated because the court failed to instruct the jurors specifically that the prosecution had to prove beyond a reasonable doubt that petitioner had made the statements attributed to him by Marie Somie and because the court allegedly removed from the jury's consideration the factual issue of whether petitioner had made those statements to Somie.

By decision and order dated January 13, 1997 the Appellate Division affirmed petitioner's judgment of conviction. *People v. Young*, 235 A.D.2d 441, 653 N.Y.S.2d 124 (2d Dep't 1997). The Appellate Division concluded that petitioner had failed to preserve for appellate review his claim that the trial court erred by not submitting to the jury the question of whether Somie was an accomplice and by not instructing the jury that, in the event that it concluded that Somie was an accomplice, her testimony required corroboration. *People v. Young*, 235 A.D.2d at 442, 653 N.Y.S.2d at 125-26. It found that, in any event, the claim was meritless. *People v. Young*, 235 A.D.2d at 442-44, 653 N.Y.S.2d at 126-27. It also determined that petitioner's remaining claims were either unpreserved for appellate review or without merit. *People v. Young*, 235 A.D.2d at 444, 653 N.Y.S.2d at 127. One justice dissented on grounds of the failure to give the accomplice charge. *People v. Young*, 235 A.D.2d at 444-46, 653 N.Y.S.2d

at 127-28.

By decision and order dated April 7, 1997 a judge of the New York Court of Appeals denied petitioner's application for leave to appeal from the Appellate Division's decision. *People v. Young*, 89 N.Y.2d 1042, 659 N.Y.S.2d 873 (1997).

By order dated April 10, 1997 the Appellate Division, Second Department, denied petitioner's application for leave to appeal from the September 19, 1996 order of the Supreme Court, Kings County, denying his motion to vacate his judgment of conviction for the Booker murder.

By papers dated January 28, 1998 petitioner moved, for a second time, pursuant to C.P.L. § 440.10, to vacate his judgment of conviction. He claimed that his judgment should be vacated on three grounds: *First*, pursuant to C.P.L. § 440.10(1)(c), because material evidence was adduced at trial through the testimony of Marie Somie that the prosecutor knew to be false. *Second*, pursuant to C.P.L. § 440.10(1)(g), because new evidence had been discovered since the entry of the judgment—namely, a photograph, allegedly of Marie Somie and Enrico Young wearing some of the victim Booker's jewelry—and that such evidence, which could not have been discovered with due diligence at the time of trial, created a probability that the verdict would have been different. *Third*, pursuant to C.P.L. § 440.10(1)(h), because he was deprived of the effective assistance of trial counsel in that counsel inexcusably failed to present an alibi defense that petitioner had been attending his son's birthday party on the day of Booker's murder.

By application dated January 28, 1998 petitioner sought a federal writ of habeas corpus. He raised the same five claims that he had raised in his Appellate Division brief on direct appeal in state court. He informed this court that he intended to raise two of the issues from his second

11

(and as yet undecided) C.P.L. § 440.10 motion.

Because state proceedings were still pending, by order dated April 20, 1998, this court held that petitioner's application was "deemed withdrawn." The court noted that "[t]he file [could] be reopened on letter to the Court upon exhaustion of state remedies."

By memorandum decision and order dated July 6, 1998 the Supreme Court denied petitioner's January 28, 1998 C.P.L. § 440.10 motion to vacate his judgment of conviction. *First*, the court concluded that petitioner had failed to establish that the alleged photograph of Enrico Young and Marie Somie wearing the victim's jewelry constituted newly discovered evidence requiring the vacatur of the judgment of conviction. Memorandum Decision and Order at 6-7. *Second*, the court held that petitioner's claim that the prosecutor had suborned perjury with regard to Somie's testimony was without merit. *Id.* at 7-9. The court noted that the alleged discrepancies between Somie's testimony at the first and second trials were insufficient to establish that she had testified falsely at the second trial regarding any material issue, and that, in any event, petitioner possessed the information so that he either presented or could have presented the alleged inconsistencies to the jury. *Id.* at 8-9. *Third*, the court held that petitioner's claim of ineffective assistance of trial counsel was procedurally barred from review because petitioner had failed to show that he could not have raised the issue in his previous C.P.L. § 440.10 motion. *Id.* at 5, 9-10; *see* N.Y. Crim. Proc. Law § 440.10(3)(c) (court may deny C.P.L. § 440.10 motion to vacate a judgment of conviction when the petitioner could have raised the issue in a previous C.P.L. § 440.10 motion and unjustifiably failed to do so). The court also noted that petitioner's motion papers were insufficient to prove his claim that counsel was ineffective for not calling petitioner's family members to establish an alleged alibi. *Id.* at 10. The court rejected other aspects of petitioner's ineffective assistance of counsel claim and concluded that in the context of the entire

12

trial, petitioner had received meaningful representation. *Id.* at 11. *Finally*, the court determined that all of petitioner's other claims were procedurally barred from its review because the claims appeared on the record and were decided on appeal or because the claims could have been raised in his previous C.P.L. § 440.10 motion. *Id.* at 5, 11-12.

By order dated November 20, 1998 a judge of the Appellate Division denied petitioner's application for leave to appeal to the Appellate Division from the order of the Supreme Court, Kings County, denying his second C.P.L. § 440.10 motion.

Petitioner then filed in this court an application, dated December 4, 1998 for habeas relief. Respondent construed that petition as raising one of the same claims as raised in the original petition (namely, "Ground Two" of the January 1998 petition), as well as raising three new claims, similar to those raised in his second C.P.L. § 440.10 motion. Petitioner submitted papers, dated April 21, 1999, in which he asserted that he had never abandoned the other three claims raised in his original petition (namely, Grounds One, Three, and Four). By order dated June 16, 1999 this court ruled that petitioner was deemed to have amended his December 4, 1998 petition to present all the claims raised in his original January 28, 1998 petition. Respondent then filed an affidavit and memorandum of law, dated August 27, 1999, addressing those remaining claims.

In the meantime, petitioner had filed an application for a writ of habeas corpus with regard to his judgment of conviction for the Graham murder under Kings County Indictment Number 6163/88. This court assigned Harry C. Batchelder, Jr., Esq., and Tracy W. Young, Esq., to represent petitioner in connection with that application—case number 98-CV-281. On October 14, 1999 the parties appeared before this court, and the two cases were, as already noted, consolidated under case number 98-CV-281.

Mr. Batchelder and Ms. Young prepared a Supplemental Memorandum of Law dated January 24, 2000 in support of petitioner's habeas application regarding the Booker murder case. In that memorandum, counsel discussed the claims they considered most telling that petitioner had raised in his petition and amended petition, but did not abandon any other of petitioner's claims.

Following consolidation of the two cases under case number 98-CV-281, petitioner's application for habeas relief in both cases was held in abeyance by this court while Mr. Batchelder and Ms. Young, on petitioner's behalf, returned to state court to exhaust a claim of ineffective assistance of counsel with regard to the Graham murder case. Once that claim was exhausted, petitioner, on May 16, 2005 filed, pro se, an amended petition with this court. To that petition, petitioner attached the memorandum of law by Mr. Batchelder and Ms. Young. Ms. Donna R. Newman, Esq., who was assigned by this Court in April of 2005 to represent petitioner on his consolidated habeas applications, has also attached a copy of that Batchelder-Young memorandum of law to her papers.

Ms. Newman, in her September 7, 2005 Supplemental Brief in Support of Petition for Writ of Habeas Corpus, focuses on four of the claims that petitioner had originally raised in Points II, III, and IV of his brief on direct appeal, and then again in his petition for habeas relief, without abandoning any of petitioner's claims.

## VI. Graham Murder

On November 6, 1986 some time between 2:00 and 3:00 a.m., in an alley between Schenectady Avenue and President Street in Brooklyn, the evidence shows that petitioner shot Calvin "Bobby" Graham in the back of the head, killing him.

For this crime, petitioner was charged, by Kings County Indictment Number 6163/88, with Murder in the Second Degree, N. Y. Penal Law § 125.25(1), Criminal Possession of a Weapon in the Second Degree, N.Y. Penal Law § 265.03, and Criminal Possession of a Weapon in the Third Degree, N.Y. Penal Law § 265.02(4).

Petitioner was represented by Leo Kimmel, who had represented him at the first Booker murder trial. On November 8, 1989 at a pre-trial hearing pursuant to *People v. Molineux*, 168 N.Y. 264 (1901), the prosecutor moved for permission to introduce on the State's direct case evidence 1) that petitioner and Bobby Graham (the homicide victim) had committed a robbery in Nassau County together in October, 1986; 2) that some crack cocaine had been part of the loot from the robbery; and 3) that it was because Graham had not given petitioner his proper share of the money obtained from the sale of the crack cocaine that petitioner had killed Graham.

The prosecutor argued that he should be permitted to present the testimony of the victims of the robbery to dispel any possible speculation on the jury's part about whether the robbery had in fact occurred. Police records show that, by the time of the *Molineux* hearing, at least two of the four victims from the Nassau County robbery had been shown photographic arrays and both victims had identified petitioner's photograph, stating that petitioner was one of the men who had robbed them.

Petitioner's trial counsel opposed introduction of evidence regarding the Long Island drug robbery. He argued that the admission of the uncharged robbery evidence by the prosecutor was highly prejudicial and potentially not even relevant, since there was no conclusive evidence that petitioner had participated in the Long Island robbery. Defense counsel also argued that certainly the independent evidence of the robbery should be excluded, because admitting such evidence would essentially force the defense to "try two cases" at once. Although the trial court reserved

15

decision on the matter, it is apparent from the trial record that the court eventually agreed with defense counsel regarding the independent evidence of the robbery, since the court precluded the introduction of any such evidence.

At the *Molineux* hearing, which was attended by petitioner, defense counsel mentioned the fact that, according to police reports in his possession, an individual named Wilder had accused a man named "Sincere" of murdering Graham. The police reports indicated that in late November 1986 Wilder told the police that a drug dealer, whose street name was "Sincere," had shot the victim, Bobby Graham. Eventually, Sincere, whose real name was Demengious Allen, was arrested and held by the police so that an identification could be made by Wilder. Wilder could not be found, and Allen was released. A few days after Allen's release, his attorney, A. H. Maddox, Jr., contacted the police and informed them he was representing Allen. In the months that followed, the police made extensive efforts to find Harrison Wilder with no success.

After defense counsel mentioned the Wilder/Sincere issue at the November 8, 1989 *Molineux* hearing, the prosecutor noted that he himself had made efforts to locate Wilder, but had been unable to do so. He stated that it was the State's belief that the evidence proffered by Wilder had been an attempt by petitioner or someone associated with petitioner to deflect the police investigation away from petitioner, whom the police had interviewed the day after the homicide. No evidence to refute or further support this belief was furnished at pretrial or at the trial.

At the jury trial, the State presented the testimony of Robert Graham, who was the younger brother of the victim, Calvert "Bobby" Graham; Brenda Graham, the victim's mother; and Michelle Haile and Marie Somie, two of petitioner's former girlfriends. The State also presented medical evidence and called Detective Stanley Long.

16

In the midst of trial, just prior to Detective Long's testimony, the prosecutor made a motion in limine, seeking an order precluding defense counsel from questioning Detective Long about another detective's interview of Harrison Wilder regarding Sincere (Demengious Allen). Defense counsel acknowledged that he knew about the Wilder/Sincere matter and that he had in his possession all of the police reports on the matter. Defense counsel then told the trial court, "Although I would have liked to question this officer on anything with regard to the other arrest, I *spoke with my client and as a trial tactic I'm not going to ask any questions of this detective with respect to the other arrest they had made. Let the record indicate, though, it is the defense trial tactic.*" (99-100) (emphasis added). The trial court granted the State's motion in limine "in any event." This court credited the defense attorney's testimony in this court that petitioner participated in this strategic decision. *See* Part IV, *supra.*

Petitioner was convicted of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. On December 4, 1989 he was sentenced, as a second violent felony offender, to concurrent prison terms of twenty-five years to life on the murder count and seven and one-half to fifteen years on the weapon possession count. This term was consecutive to the term in the Graham murder.

Petitioner appealed from his judgment of conviction. He claimed that 1) the trial court improperly allowed the State to introduce evidence of an uncharged robbery to establish petitioner's motive for murdering Bobby Graham, the court provided insufficient limiting instructions on the use of such evidence, and as a result, petitioner was denied his due process right to a fair trial; and 2) he was denied effective assistance of trial counsel, in that counsel did not properly deal with the uncharged crimes evidence, counsel developed inflammatory facts regarding the uncharged crimes evidence on cross-examination, and counsel highlighted this

prejudicial evidence in his summation. In a pro se supplemental brief, petitioner additionally

claimed that he had been denied a fair trial by the prosecutor's opening statement, summation,

and allegedly knowing use of perjured testimony. One of the exhibits attached to his pro se brief

was a Homicide Bureau Information Sheet concerning an audiotaped statement given by Marie

Somie to an assistant district attorney.

On November 9, 1992 the Appellate Division unanimously affirmed the judgment of

conviction for the Graham murder. *People v. Young*, 187 A.D.2d 548, 590 N.Y.S.2d 756 (2d Dep't

1992). It "reject[ed]" petitioner's claim that the admission of uncharged crimes evidence

constituted reversible error. The Appellate Division also concluded that petitioner's claim that he

was denied the effective assistance of counsel was without merit. *Id.* Finally, the Appellate

Division held that petitioner's remaining claims, including those raised in petitioner's supplemental

brief, were either unpreserved for appellate review or without merit. *Id.*

On March 30, 1993 a judge of the New York Court of Appeals denied petitioner's

application for leave to appeal from the Appellate Division's decision. *People v. Young*, 81

N.Y.2d 895, 597 N.Y.S.2d 957 (1993).

By pro se papers dated March 26, 1993 petitioner moved in trial court, pursuant to § C.P.L.

440.10, for an order vacating his judgment of conviction. He claimed that the judgment of

conviction should be vacated on the ground that the State had failed to turn over a Homicide

Bureau Information Sheet, which, petitioner claimed, constituted newly discovered evidence and

*Rosario* material. The sheet, which petitioner attached to his papers as an exhibit, summarized an

audiotaped statement that one of the prosecution witnesses, Marie Somie, had made to an assistant

district attorney. The sheet also mentioned statements made by a police detective who was not a

witness at trial.

18

Before the trial court decided petitioner's March 26, 1993 motion to vacate his judgment of conviction, petitioner filed a second pro se motion dated July 22, 1994 in which he cited two new grounds for the vacatur of his judgment of conviction pursuant to C.P.L. § 440.10. In his July 22, 1994 papers, petitioner claimed that 1) he had not received at trial a Homicide Bureau Information Sheet concerning the prosecution witness, Marie Somie, and this nondisclosure constituted a *Rosario* violation, and 2) he had not received at trial a Homicide Bureau Information Sheet concerning Harrison Wilder, and that such nondisclosure constituted a *Brady* violation.

The court reviewing petitioner's C.P.L. §440.10 motion regarding Indictment Number 8459/87 (the Booker murder) concluded that a hearing was necessary to determine the authenticity of the Homicide Bureau Information Sheet and to determine whether this document had been improperly withheld from petitioner at trial. The court reviewing petitioner's motion regarding Kings County Indictment Number 6163/88 (the Graham murder), also concluded that such a hearing was necessary, as the same document was also the subject of petitioner's *Rosario* claim in his July 22, 1994 motion to vacate his judgment of conviction under Indictment Number 6163/88. Robert Fisher, Esq., was appointed by the court to represent petitioner on Indictment Number 6163/88. Edna Schwartz, Esq., of The Legal Aid Society represented petitioner on Indictment Number 8459/87.

On February 13, 1996 petitioner, represented by both of his counsel, appeared in Supreme Court. Petitioner consented to the consolidation of the two indictments for the purpose of a hearing on the authenticity of "Exhibit E." A hearing was held.

By a Memorandum Decision and Order dated September 19, 1996 regarding Kings County Indictment Number 8459/87, the Supreme Court rejected petitioner's testimony, credited the testimony of the State's witness, and determined that Exhibit E was a *"forged and non-authentic*

19

*document which was never withheld from petitioner at any time as it never existed until*

*fraudulently produced." Id.* (emphasis supplied). The court denied petitioner's C.P.L. § 440.10

motion to vacate his judgment of conviction under Kings County Indictment Number 8459/87.

By a Memorandum Decision and Order dated February 24, 1997 covering the Graham

murder case, the Supreme Court denied both petitioner's March 1993 C.P.L. § 440.10 motion and

his July 1994 C.P.L. § 440.10 motion to vacate his judgment of conviction.

With respect to the 1993 motion, the court concluded that, even assuming that petitioner

had not received the Homicide Bureau Information Sheet summarizing Somie's interview with an

assistant district attorney (the same sheet that petitioner had attached to his pro se supplemental

brief to the Appellate Division), the sheet did not provide a basis for vacating the judgment of

conviction. Memorandum Decision and Order at 3-6.

With respect to the 1994 motion, the court noted that petitioner had failed to provide

sufficient allegations of fact to establish that he had not received the Homicide Bureau Information

Sheet about Harrison Wilder, and thus, petitioner's motion could be denied pursuant to C.P.L. §

440.30(4)(b) and (d). *Id.* at 7-8. Additionally, citing the procedural bar of C.P.L. § 440.10(3)(a),

the court declined to review petitioner's *Brady* claim regarding the Homicide Bureau Information

Sheet about Harrison Wilder. The court found that, in any event, the Homicide Information Sheet

concerning Harrison Wilder was not *Brady* material and did not provide a basis for vacating

petitioner's judgment of conviction. *Id.* at 8-10. It also concluded that the sheet labeled "Exhibit

E" was a forgery, was not *Rosario* material, and did not provide a basis for vacatur. *Id.* at 6-7. The

court noted that petitioner should have raised the claim in his original motion papers, and that the

motion, insofar as it relied on this *Rosario* claim, could be denied under C.P.L. § 440.10(3)(c). *Id.*

at 7.

By order dated July 15, 1997 the Appellate Division denied petitioner's application for leave to appeal from the trial court's order denying petitioner's motions to vacate his judgment of conviction under Kings County Indictment Number 6163/88.

By papers dated July 22, 1997 petitioner moved before the Appellate Division for an order granting a writ of error coram nobis on the ground that he had been deprived of the effective assistance of appellate counsel. Petitioner claimed that appellate counsel had been ineffective for failing to incorporate in the claim of ineffective assistance of trial counsel that appellate counsel did raise, a claim that trial counsel was ineffective for not using grand jury testimony to cross-examine the prosecution witnesses and for not using the Homicide Bureau Information Sheet that summarized an audiotaped statement made by Marie Somie to an assistant district attorney and that petitioner previously attached to his pro se supplemental brief on direct appeal and to his March 1993 C.P.L. § 440.10 motion.

By decision and order dated November 10, 1997 the Appellate Division denied petitioner's motion for a writ of error coram nobis. *People v. Young*, 244 A.D.2d 441, 665 N.Y.S.2d 557 (2d Dep't 1997).

By papers dated January 9, 1998 petitioner applied, pro se, to this court for federal habeas corpus relief. He raised the same claims that he had raised 1) on direct appeal to the Appellate Division; 2) in his two C.P.L. § 440.10 motions attacking his judgment of conviction for the Graham murder; and 3) in his motion for a writ of error coram nobis.

This court assigned Tracy W. Young, Esq. and Harry C. Batchelder, Esq., to represent petitioner on this application for federal habeas relief. Ms. Young and Mr. Batchelder submitted a Supplemental Memorandum of Law, dated July 16, 1999 in support of petitioner's habeas petition. In that Supplemental Memorandum of Law, petitioner raised two claims. *First*, as he had in the

Appellate Division on direct appeal, that he had been denied due process by the admission of evidence concerning an uncharged robbery that petitioner had committed with Bobby Graham (the murder victim) and concerning details about that robbery, and by the trial court's failure to deliver sufficient limiting instructions concerning the jury's use of the uncharged crime evidence. *Second*, that he had been denied the effective assistance of trial counsel, in that counsel unjustifiably: 1) failed to prevent the admission of prejudicial uncharged crime evidence; 2) elicited damaging uncharged crime evidence and referred to that evidence in his summation; 3) failed to request limiting instructions concerning the jury's use of the uncharged crime evidence; 4) failed to investigate or explore allegedly exculpatory evidence (i.e., Harrison Wilder's accusation of Demengious Allen); and 5) failed to cross-examine a prosecution witness with an allegedly prior inconsistent statement. Although petitioner had previously raised in State court a claim of ineffective assistance of trial counsel based on the first three grounds, petitioner had never previously cited in support of a claim of ineffective assistance of trial counsel the fourth and fifth grounds that he set forth in his petition.

On October 14, 1999 the parties appeared for oral argument before this court. The court found that petitioner had not exhausted his claim of ineffective assistance of counsel based on trial counsel's alleged failure to investigate and explore the Harrison Wilder information concerning Demengious Allen, a.k.a. Sincere. So that petitioner could decide whether he wanted to 1) drop the unexhausted claim and have this court rule on the remaining claims of his petition or 2) go to State court and exhaust the claim, this court granted petitioner $1,000 to investigate the allegation of Harrison Wilder concerning Demengious Allen. In light of the court's request that the State cooperate with defense counsel's investigation of Wilder's allegation, an assistant district attorney sent Ms. Tracy W. Young on November 4, 1999 copies of numerous DD-5 police reports, the

22

crime scene photographs, the autopsy report, the District Attorney's Office's homicide bureau information "scratch sheets," and various miscellaneous police documents which were contained in the State's trial folder in petitioner's case under Kings County Indictment Number 6163/88. Defense counsel retained the services of Roland Thomas, an investigator.

In a December 1999 motion requesting additional funds for further investigation, petitioner's counsel, Ms. Young, observed that none of the materials provided by the State noted whether petitioner's photograph had ever been positively identified by the victims of the Long Island robbery. The State responded to Ms. Young's motion and noted that positive identifications had been made. Attached to the response submitted by the State were police reports from Nassau County.

By a supplemental memorandum of law dated March 21, 2000 defense counsel, Mr. Batchelder and Ms. Young, expanded on their previously raised arguments in support of petitioner's application for a federal writ of habeas corpus.

On May 9, 2000 the parties again appeared before this court. At that time, this court reaffirmed its earlier ruling that petitioner's claim of ineffective assistance of counsel was unexhausted. This court stated that it would hold the federal petition in abeyance until the claim had been exhausted, and the court directed defense counsel to move promptly in State court.

By papers filed in January 2001 petitioner, represented by Ms. Young and Mr. Batchelder, moved in the Supreme Court for an order, pursuant to C.P.L. § 440.10(1)(h), vacating his judgment of conviction. As the sole claim in support of that motion, petitioner contended that he was denied the effective assistance of trial counsel in that counsel allegedly unjustifiably: 1) failed to prevent the admission of prejudicial uncharged crime evidence; 2) elicited damaging uncharged crime evidence and referred to that evidence in his summation; 3) failed to request limiting instructions

23

concerning the jury's use of the uncharged crime evidence; 4) failed to cross-examine Marie Somie with portions of her audiotaped statement; 5) failed to draw the jury's attention to the allegedly "negligent" police investigation; and 6) failed to "investigate the Wilder/Sincere scenario."

By Memorandum Decision and Order, dated September 7, 2001 the Supreme Court denied petitioner's January 2001 motion to vacate his judgment of conviction. The court concluded that petitioner's claim of ineffective assistance of trial counsel could have been raised in one of his previous C.P.L. § 440.10 motions. It held that the claim was procedurally barred from its review pursuant to C.P.L. § 440.10(3)(c). Memorandum Decision and Order at 12-14. The court also found that, in any event, the claim was meritless. *Id.* at 14-21.

In October 2002 petitioner's counsel, Mr. Batchelder, and respondent appeared before this court in order to report on the progress of petitioner's efforts to exhaust his ineffective assistance of trial counsel claim. Petitioner followed the proceedings via telephone from his place of incarceration. Mr. Batchelder informed this court that he intended to seek leave to appeal to the Appellate Division from the trial court's order denying petitioner's C.P.L. § 440.10 motion. Apparently, neither Mr. Batchelder nor Ms. Young ever moved for leave to appeal from the denial of that motion.

On October 26, 2004 respondent appeared before this court. Petitioner participated in the proceedings via telephone from his place of incarceration. This court relieved Mr. Batchelder and Ms. Young as petitioner's counsel. This court urged petitioner to promptly seek leave to appeal from the denial of his C.P.L. § 440.10 motion.

By papers dated November 4, 2004 petitioner, pro se, moved before the Appellate Division for an order granting him leaving to appeal from the trial court's September 7, 2001 order denying his C.P.L. § 440.10 motion to vacate his judgment of conviction under Indictment Number

6163/1988. By decision and order dated January 12, 2005 a judge of the Appellate Division, denied petitioner's leave application.

In papers dated November 4, 2004 petitioner, pro se, moved before the Appellate Division, for the second time, for an order granting him a writ of error coram nobis. He claimed that he was denied effective assistance of appellate counsel because counsel, when raising the claim of ineffective assistance of trial counsel, unjustifiably failed to cite the following alleged defects in trial counsel's performance: 1) that trial counsel allegedly failed to investigate, explore, or pursue Harrison Wilder's implication of "Sincere" in the murder of Bobby Graham and 2) that trial counsel failed to "use exculpatory material" and to draw the jury's attention to the allegedly "negligent" police investigation. This claim of trial counsel's ineffectiveness resembled the one that petitioner had raised before the Supreme Court in his third C.P.L. § 440.10 motion, which was rejected by that court in its decision dated September 7, 2001. On March 14, 2005 the Appellate Division denied petitioner's application for a writ of error coram nobis. *People v. Young*, 16 A.D.3d 527, 792 N.Y.S.2d 510 (2d Dep't 2005).

On July 5, 2005 petitioner's application for leave to appeal from the Appellate Division's March 14, 2005 order was denied by a judge of the New York Court of Appeals. *People v. Young*, 5 N.Y.3d 796, 801 N.Y.S.2d 817 (2005).

In April 2005 this court appointed new counsel, Donna R. Newman, Esq., to represent petitioner. Ms. Newman submitted a Supplemental Brief, dated September 7, 2005 in which she focused on claims concerning petitioner's judgment of conviction for the Booker murder under Kings County Indictment Number 8459/87. In this brief, Ms. Newman declares that none of the habeas claims previously raised by petitioner regarding his judgment of conviction of the Graham murder under Kings County Indictment Number 6163/88 have been abandoned.

Following the appointment of Ms. Newman, petitioner filed additional pro se papers with this court. Among those papers is a memorandum of law, dated May 5, 2005, entitled "Habeas Corpus Proceeding upon the Completion of State Appellate Practice." In these papers, petitioner reasserts the ineffective assistance of trial counsel claim that he had raised in his third C.P.L. § 440.10 in state court and the ineffective assistance of appellate counsel claim that he raised in his second application for a writ of error coram nobis in state court.


**VII.    Summary of Petitioner's Claims in Two Murders**

With regard to the *Booker murder case*, petitioner is now raising eight claims; Ms. Newman's Supplemental Brief focuses on the first four claims set out below.

1.    Petitioner's due process and Sixth Amendment rights were violated by the trial court's failure to instruct the jury to find whether Marie Somie was an accomplice, and that if it did so find, her testimony required corroboration.

2.    Petitioner's rights under the Confrontation Clause were violated by the trial court's curtailment of cross-examination of Somie.

3.    Petitioner's due process right to a fair trial was violated by the admission of evidence of petitioner's prior bad acts and by the prosecutor's summation.

4.    Petitioner's due process right to a fair trial was violated by the court's charge regarding petitioner's confession to Somie.

5.    Petitioner's due process right to a fair trial was violated because the evidence was legally insufficient.

6.    Petitioner's due process right to a fair trial was violated by the admission into evidence of Somie's allegedly perjured testimony.

26

7.      Petitioner's due process right was violated by the state court's denial of a new trial despite the allegedly newly discovered evidence.

8.      Petitioner's right to the effective assistance of trial counsel was violated by counsel's failure to put forth an alibi defense that petitioner was at a birthday party on the day of the crime.

With respect to the *Graham murder case*, petitioner is raising the following five claims; Mr. Batchelder and Ms. Young in their supplemental papers focus on the first and the second claim set out below:

1.      Petitioner's due process right to a fair trial was violated by the admission into evidence of petitioner's prior uncharged robbery and the trial court's allegedly inadequate limiting instructions.

2.      Petitioner was deprived of the effective assistance of trial counsel because counsel allegedly 1) failed to prevent the admission of uncharged crimes evidence; 2) elicited damaging uncharged crimes evidence and referred to that evidence on summation; 3) failed to request detailed limiting instructions concerning the jury's use of the uncharged crimes evidence; 4) failed to cross-examine Somie with portions of her audiotaped statement; 5) failed to draw the jury's attention to the allegedly negligent police investigation; and 6) failed to investigate the "Wilder/Sincere scenario."

3.      The prosecutor violated the *Rosario* and *Brady* rules by failing to turn over 1) a Homicide Bureau Information Sheet about Somie's audiotaped statement; 2) a Homicide Bureau Information Sheet about Somie (the State court determined that this document was a forgery); and 3) a Homicide Bureau Information Sheet about

Harrison Wilder.

4.      Petitioner was denied the effective assistance of appellate counsel in that

appellate counsel 1) failed to raise a claim that, as a result of a violation of the

notice provisions N.Y. Crim. Proc. Law § 190.50, petitioner had been denied his

right to testify at the Grand Jury and 2) failed to incorporate into the ineffective

assistance of trial counsel claim that was raised on appeal a claim that trial

counsel was ineffective because counsel i) did not cross-examine prosecution

witnesses using their grand jury testimony; ii) did not somehow use at trial the

Homicide Bureau Information Sheet summarizing Somie's audiotaped statement;

iii) did not investigate, explore, or pursue Harrison Wilder's implication of

"Sincere" in the murder of Bobby Graham; and iv) did not "use exculpatory

material" and draw the jury's attention to the allegedly "negligent" police

investigation.

## VIII.   Analysis of Contentions in Booker Murder Case

### A.      Failure to Instruct on Need for Accomplice Corroboration

The only troublesome issue in the Booker murder case was the failure of the trial court to

deliver an accomplice corroboration instruction covering the State's chief witness, Marie Somie.

It seems apparent that without her testimony a conviction would not have been possible.  At

petitioner's request she had locked the cellar door presenting escape while defendant and his

brother beat and strangled Booker.  She took other family members to the movies to permit the

two murderers to wrap the body and take it to Brooklyn where it was dumped.  She gave

evidence of many corroborating details.  It was she who turned petitioner in to the police some

months after the event. It can be assumed that she could have been charged as a coconspirator.

Federal law does not require a coconspirator charge to the jury requiring corroborating evidence, through, of course, on the issue of credibility the judge in a federal trial will emphasize that an unindicted witness-coconspirator may be testifying against the accused to save her own neck. In the state trial the credibility of the witness was adequately attacked on cross-examination.

As one of the grounds in support of his petition for habeas corpus relief, petitioner claims that his due process right to a fair trial was violated by the trial court's failure to instruct the jury to find whether Marie Somie was an accomplice as a matter of fact, and if it did so find, that her testimony required corroboration pursuant to New York's accomplice corroboration rule.

The New York rule provides that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. Law § 60.22(1).

In attorney Newman's Supplemental Brief petitioner asserts that both his due process and Sixth Amendment rights were violated by the court's failure to give this instruction. Petitioner did not mention the Sixth Amendment with regard to this claim at trial, in his brief in the Appellate Division or in his application to the New York Court of Appeals. To the extent that petitioner now claims a Sixth Amendment violation, that claim is arguably unexhausted, having never been fairly presented in any State court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732-3 (1999). Because the claim is one that could have been raised on direct appeal, petitioner would be barred by state procedural rules from now trying to exhaust the claim. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Thus, the claim may be deemed exhausted but procedurally barred. *See Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994), *cert. denied*,

514 U.S. 1054, 115 S. Ct. 1436 (1995). Petitioner has failed to establish cause and prejudice that would excuse him from the effect of his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644 (1986). Nor has he established that the failure to consider his claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). Thus, this court could decline to review petitioner's Sixth Amendment claim on the ground that the claim is procedurally barred from federal habeas review. The claim has no more merit than the due process claim.

Petitioner arguably raised this same claim as a federal due process violation in an aspect of the second point in his brief to the Appellate Division by citing the Fourteenth Amendment in the brief's point heading. *See Reid v. Senkowski*, 961 F.2d 374, 376 (2d Cir. 1992). Insofar as petitioner's application for habeas relief rests on this claim, the petition is denied for three reasons. First, it is procedurally barred from this court's review, because the Appellate Division invoked a state procedural rule when rejecting petitioner's claim. Second, it does not present a federal constitutional issue. Third, it involves a discretionary ruling by the trial court.

A federal court, when reviewing a habeas petition from a state prisoner, generally cannot consider the merits of a federal constitutional claim when the state court refused to review the merits of the claim based on an adequate and independent state ground. *See Lambrix v. Singletary*, 520 U.S. 518, 522-23, 117 S. Ct. 1517, 1522-23 (1997); *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81-91, 97 S. Ct. 2497, 2503-9 (1977). New York's contemporaneous objection rule, which requires that a party make his position with respect to a ruling or instruction known to the trial court, is an adequate and independent ground for decision. *See* N.Y. Crim. Proc. Law § 470.05(2); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *Washington v. LeFevre*, 637 F. Supp. 1175, 1176-77 (E.D.N.Y.

1986); *see generally Wainwright v. Sykes*, 433 U.S. at 85-90.

The Appellate Division rejected petitioner's accomplice charge claim on the basis of the adequate and independent state ground of New York's contemporaneous objection rule. On petitioner's direct appeal, the Appellate Division held that petitioner had failed to preserve for appellate review the claim that the trial court had erred in failing to submit as a factual question for the jury to resolve Marie Somie's alleged status as an accomplice. *People v. Young*, 235 A.D.2d 441, 442, 653 N.Y.S.2d 124, 125-26 (2d Dep't 1997) ("This contention is unpreserved for appellate review. . . . [T]he defense counsel failed to alert the court to the contention now raised on appeal."). Thereafter, the New York Court of Appeals denied petitioner's request for leave to appeal. *People v. Young*, 89 N.Y.2d 1042 (1997). Since the Appellate Division was the last court to pass on the issue, and it expressly rested its judgment on procedural default grounds, petitioner's claim is procedurally barred from habeas review.

When "a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of a federal claim," a federal habeas court is foreclosed from reviewing the claim. *Velasquez v. Leonardo*, 898 F.2d at 9; *accord Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996), *cert. denied*, 520 U.S. 1108, 117 S. Ct. 1116 (1997); *see Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (federal habeas court cannot review a claim if a state court explicitly invoked a state procedural bar rule as a separate basis for decision). In this case, although the Appellate Division addressed the merits of the accomplice charge claim and found the claim to be without merit, it did so in the alternative to its plain statement that petitioner had failed to comply with New York's contemporaneous objection rule, foreclosing this court's review of the accomplice charge claim. *See Dowtin v. Cohen*, 99-CV-323, 2005 U.S. Dist. LEXIS 4731, at *39-*40 (E.D.N.Y. March 25,

2005) (because Appellate Division found petitioner's accomplice charge claim to be unpreserved for appellate review, federal court is procedurally barred from reviewing the claim in light of this independent and state ground); *Nieves v. Fischer*, 03 Civ. 9803 (DC), 2004 N.Y. Dist. LEXIS 25921, at *13-*14 (S.D.N.Y. 2004) (same).

The fact that one judge dissented does not change the result. As the majority of the Appellate Division noted, defense counsel, by requesting only that the trial court charge the jury that Somie was an *accessory*, had failed to alert the court to the contention that he was raising on appeal—that Marie Somie's alleged status as an *accomplice* should have been submitted to the jury for resolution. *People v. Young*, 235 A.D.2d 441, 442, 653 N.Y.S.2d 124, 125-26 (2d Dep't 1997). Under New York State's contemporaneous objection rule, *see* N.Y. Crim. Proc. Law § 470.05(2), in order for a party to preserve a question of law for appellate review, the party must raise a timely protest that is sufficiently clear to draw the attention of the trial court to the specific issue to be preserved. *See People v. Robinson*, 88 N.Y.2d 1001, 1002, 648 N.Y.S.2d 869, 870 (1996). Defense counsel's failure to mention "accomplice," "corroboration," or Section 60.22 of the New York Criminal Procedure Law arguably obscured the nature of her accomplice charge request. While arguably an extremely narrow view of the issue, the Appellate Division did properly invoke the state procedural bar and determined that petitioner's claim of error was unpreserved for appellate review.

No cause for the procedural default and resulting prejudice or fundamental miscarriage of justice has been shown. *See Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565.

Petitioner's accomplice charge claim can also be rejected on the ground that the claim does not present a federal constitutional issue for this court to review. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.

32

Ct. 871, 875 (1984); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

The claim of error is entirely based on the New York State rule of evidence requiring that the testimony of an accomplice be supported by corroborative evidence tending to connect the defendant with the commission of the offense in order to sustain a conviction for such offense. *See* N.Y. Crim. Proc. Law § 60.22. The federal constitution does not prohibit the conviction of a petitioner based on the uncorroborated testimony of an accomplice. *See Caminetti v. United States*, 242 U.S. 470, 495, 37 S. Ct. 192, 198 (1917); *Martinez v. Walker*, 380 F. Supp. 2d 179, 183 (W.D.N.Y. 2005); *Gaiter v. Lord*, 917 F. Supp. 145, 150 (E.D.N.Y. 1996) (collecting cases). Petitioner was not deprived of a federal constitutional right by the trial court's failure to 1) instruct the jury to make a factual finding as to whether Somie was an accomplice and 2) charge the jury on the state evidentiary rule requiring corroboration of accomplice testimony. No Supreme Court case has been brought to this court's attention ruling that a denial of a state accomplice corroboration charge is a federal constitutional violation.

In any event, the Appellate Division found that the trial court did not err in failing to give a charge under New York law regarding the possibility that Somie was an accomplice, because the evidence at trial was insufficient to establish that Somie had participated in the offense charged or an offense based upon the same, or some of the same, facts or conduct which constituted the offense charged. *People v. Young*, 235 A.D.2d at 442-44, 653 N.Y.S.2d at 126-27.

Conceivably, Marie Somie's conduct before, during, and after Booker's murder was consistent with innocence. Uncontradicted testimony established that Somie was afraid of petitioner. She knew that he was a violent man who had killed two people and who kept guns in

33

the house. He had threatened Somie and her family. When petitioner told Somie to do something, she arguably did it out of fear under coercion. None of her actions on the date of the killing, May 6, 1987, demonstrated that she had any motive for killing Booker or that she had any interest in facilitating the crime.

Petitioner's argument assumes that the jury would have had a reason to credit Somie's testimony regarding her conduct on May 6th, but at the same time, to discredit her testimony that 1) she was frightened of petitioner; 2) she did not believe petitioner was serious in his intent to kill Booker; and 3) she had no involvement in another killing that led to the Booker murder. In light of the other evidence at trial, the jury would have had no reason to perform such selective surgery on Somie's testimony. *Cf. People v. Scarborough*, 49 N.Y.2d 364, 373, 426 N.Y.S.2d 224, 230 (1980) (a court should not engage in the "selective dissection of the integrated testimony of a single witness as to whom credibility, or incredibility, could only be a constant factor").

Arguably there was sufficient corroboration as a matter of state law. Somie's account of the murder was corroborated by the police evidence, the medical evidence, the forensic evidence, and the telephone logs. Angela Braswell's testimony concerning petitioner's telephone call to her on May 6th, which corroborated Somie's own account of the call, and petitioner's arguably strange behavior regarding Booker's mother suggested petitioner's consciousness of guilt.

Assuming that it was an error of state law for the trial court to have failed to instruct the jury to determine whether Somie was an accomplice, the error did not deprive petitioner of his due process right to a fair trial. As already noted, under federal law a conviction may be sustained even on the basis of the testimony of a single accomplice, provided that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt. *See United States v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993). Somie's credible testimony, coupled with all the other evidence

34

presented at trial, overwhelmingly established petitioner's guilt of Booker's murder. Even if Somie may have been considered an accomplice, petitioner was not deprived of his due process right to a fair trial.

### B.     Limiting Cross-Examination

Petitioner claims that his right to confrontation was violated when the trial court limited cross-examination of Marie Somie regarding her alleged prior crimes. The claim is meritless.

The witness was thoroughly cross-examined. The crucial issue of her credibility was clear to the jury. The trial court made a number of rulings limiting cross-examination within its discretion.

Because petitioner filed his habeas application after the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), the petition is governed by 28 U.S.C. § 2254, as amended. *See Williams v. Taylor*, 529 U.S. 362, 402, 120 S. Ct. 1495, 1518 (2000). The AEDPA provides that a federal court may not issue a writ of habeas corpus with respect to a claim that was adjudicated by the state courts on the merits "unless the adjudication of the claim 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). A state adjudicates a petitioner's federal claim on the merits when "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

Petitioner raised the Confrontation Clause claim in Point III of his Appellate Division brief on direct appeal. The Appellate Division did not specifically address this claim in its

35

decision. Rather, after discussing at length petitioner's claim regarding the trial court's omission of an accomplice corroboration instruction, the Appellate Division held that the remaining claims were "either unpreserved for appellate review or without merit." *People v. Young*, 235 A.D.2d 441, 444, 653 N.Y.S.2d 124, 127 (2d Dep't 1997).

The law in the Second Circuit is arguably unsettled as to whether such a conclusion is considered an adjudication on the merits. In *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000), the Second Circuit found that the same "either/or" language as used in petitioner's case failed to establish that Fama's claims were procedurally barred, and the Second Circuit concluded that those claims were, therefore, ripe for federal habeas review. In *Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir. 2002), the Second Circuit again examined the "either/or" language, read the state court's opinion as having adjudicated Ryan's claim on the merits, and applied the AEDPA standard of review. In *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir.), *cert denied sub nom. De Berry v. Smith*, — U.S. —, 126 S. Ct. 225 (2005), however the Second Circuit, relying on *Miranda v. Bennett*, 322 F.3d 171 (2d Cir. 2003), concluded that, in light of the Appellate Division's use of the "either/or" language, it was unclear that the state court had had adjudicated the merits of DeBerry's claim. Concurring only in the result of *DeBerry*, Chief Judge John M. Walker, Jr. wrote separately to highlight the inconsistencies in the Second Circuit cases in this area. *Id.* at 70-71. Chief Judge Walker stated that he believed that *Miranda v. Bennett* had been wrongly decided and should not be the law of the circuit. *DeBerry*, 403 F.3d at 72.

As observed in *Taus v. Senkowski*, 293 F. Supp. 2d 238, 245 (E.D.N.Y. 2003), *aff'd*, 134 Fed. Appx. 468 (2d Cir. 2005), the Second Circuit's "congeries of holdings" fail to provide any definitive answer as to whether the AEDPA standard of review should apply to a case such as

36

petitioner's where the Appellate Division used "either/or" language in disposing of his claim.

Assuming that the AEDPA deferential standard of review applies to petitioner's Confrontation Clause claim (or even if it does not), petitioner has failed to establish that he is entitled to relief, because he has not shown that the state court's adjudication resulted in a decision that involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See* 28 U.S.C. § 2254(d).

The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412, 120 S. Ct. at 1523; *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001), *cert. denied sub nom. Gilchrist v. Smith*, 535 U.S. 1064, 122 S. Ct. 1933 (2002). Moreover, "as the statutory language makes clear, . . . [Section] 2254(d)(1) restricts the source of clearly established law to [the Supreme Court's] jurisprudence." *Williams*, 529 U.S. at 412, 120 S. Ct. at 1523; *see also Mask v. McGinnis*, 252 F.3d 85, 90 (2d Cir. 2001) (petitioner cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent).

An unreasonable application of federal law is more than an incorrect application, and a federal court should review a state court's application of federal law using a standard of objective unreasonableness. *Williams*, 529 U.S. at 409-10, 120 S. Ct. at 1521-2.

The state court determinations of factual issues "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1). In light of these principles of AEDPA review, petitioner

has failed to establish that he is entitled to habeas relief. Even assuming that the pre-AEDPA non-deferential standard of review applies to petitioner's Confrontation Clause claim, habeas relief is still unwarranted.

The Sixth Amendment's Confrontation Clause does not prohibit a trial court from imposing some limits on a defense attorney's cross-examination of a prosecution witness. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986); *United States v. Maldonado-Rivera*, 922 F.2d 934, 955-56 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233, 111 S. Ct. 2858 (1991); *Carroll v. Hoke*, 695 F. Supp. 1435, 1439 (E.D.N.Y. 1988), *aff'd without op.*, 880 F.2d 1318 (2d Cir. 1989).

The Confrontation Clause is not violated merely because the petitioner is prevented from cross-examining a prosecution witness about matters relevant to the witness's general credibility. *See United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir.) (prosecution witness's refusal to answer questions about prior criminal activity did not violate Confrontation Clause, where questions "were purely collateral for they related solely to his credibility as a witness"), *cert. denied*, 375 U.S. 822, 84 S. Ct. 60 (1963); *Dunbar v. Harris*, 612 F.2d 690, 693-94 (2d Cir. 1979) (same). "Cross-examination is not improperly curtailed if the jury is in possession of facts sufficient to make a discriminating appraisal of the particular witness's credibility." *United States v. Rosa*, 11 F.3d 315, 336 (2d Cir. 1993) (internal quotation marks and citation omitted), *cert. denied*, 511 U.S. 1042, 114 S. Ct. 1565 (1994); *accord United States v. Caming*, 968 F.2d 232, 237 (2d Cir.), *cert. denied*, 506 U.S. 956, 113 S. Ct. 416 (1992).

The trial court did not violate the Confrontation Clause by curtailing defense counsel's cross-examination of Marie Somie about matters relevant to her general credibility. It appropriately sustained the prosecutor's objections to several of defense counsel's questions of Marie Somie, because those questions were either repetitive, or improperly suggested that mere presence at a crime scene was a crime in itself, or improperly assumed facts not in evidence, or were confusingly phrased.

When cross-examining Marie Somie, defense counsel, without objection from the prosecutor, asked the witness: 1) whether, in 1987, she had been supporting herself by selling drugs for drug dealers in Queens; 2) whether she was also being supported by John Chang and his brother Jim Chang who were dealing in drugs; and 3) whether Jim and John Chang had given her money that they had obtained from robbing drug dealers whom they had set up. Somie responded, "No" to all three questions.

Defense counsel next asked Somie, "[I]sn't it true that you were selling drugs for Charles Bracket, also known as Tookie?" Somie answered, "No," before the court sustained the prosecutor's objection. Defense counsel then posed three more questions, each time asking whether Somie had sold drugs for a different individual. The court sustained the prosecutor's objections to all three questions.

The court's rulings were not an abuse of discretion. Somie had already responded to three questions regarding alleged drug dealing activities; she had denied that she personally had sold drugs in 1987, denied that she had been supported by John and Jim Chang who were allegedly dealing drugs, and denied that she had received any money from the Changs who had allegedly robbed drug dealers. Additional questions concerning specific dealers could have been deemed cumulative. The court did not abuse its discretion in sustaining the prosecutor's objections to these

39

latter repetitive questions. *See Ocasio v. Artuz*, 98-CV-7925, 2002 U.S. Dist. LEXIS 9790, *26-*27 (E.D.N.Y. 2002) (trial court did not abuse discretion in limiting repetitive questions and such rulings did not implicate the Confrontation Clause).

The court had reason to sustain the prosecutor's objections to two questions posed by defense counsel. The first question suggested that mere presence at a crime scene was somehow a crime in itself or a bad act. Whether or not Somie's husband (with whom she was not living in 1987) and his brother had strangled some drug dealers was only remotely relevant to Somie's credibility. The second question was arguably improper because it assumed facts not in evidence and was a question for which no proper foundation had been laid.

Petitioner points to instances in which the court allegedly improperly sustained the prosecutor's objections to defense counsel's questions of Marie Somie. Counsel's questions were arguably somewhat garbled and may have implicated petitioner himself in alleged drug activities. It was reasonable for the court to curtail this line of cross-examination, as well as counsel's earlier repetitive questions regarding people for whom Somie had allegedly dealt drugs, because of the potential for prejudice against petitioner.

After the court had made its reasoning known to defense counsel and counsel still insisted that she wanted to have Somie recalled so that counsel could question her about her alleged drug activities, the trial court did not preclude petitioner from calling Somie, and suggested that Somie, if called, could be treated as a hostile witness by petitioner.

The court struck a reasonable balance: on the one hand, initially preventing defense counsel from pursuing a line of questioning that the court could conclude might prejudice petitioner, and on the other hand, after informing counsel of the court's concerns and the potential repercussions of such questioning, permitting counsel to recall Somie for further questioning. The defense's failure

to recall Somie was sensible since it might only reemphasize the earlier testimony. She had, in any event, been fairly thoroughly discredited—even though she could be, and was, believed.

## C.     Prior Uncharged Crimes And Bad Acts; Admissions Instructions; Prosecutor's Summation

Petitioner claims he was denied due process by the combined effect of the admission of prior uncharged crimes and bad acts evidence, the trial court's instructions with regard to that evidence, and some of the prosecutor's summation comments. The claim is without merit.

Petitioner raised this same claim in Point III of his brief to the Appellate Division on direct appeal. The appellate court did not specifically address this claim in its decision. After discussing at length petitioner's claim regarding the trial court's omission of an accomplice corroboration instruction, the Appellate Division held that the remaining claims that petitioner had raised in his brief were "either unpreserved for appellate review or without merit." *People v. Young*, 235 A.D.2d 441, 444, 653 N.Y.S.2d 124, 127 (2d Dep't 1997). The effect of such a ruling on a habeas review has been discussed above.

The Court of Appeals for the Second Circuit has set forth the standard for federal habeas review for claims of improperly admitted evidence:

> whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been "crucial, critical, highly significant."

*Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)).

The admission of the uncharged crimes and bad act evidence was proper under state and, arguably, federal evidentiary law. It did not result in the denial of a fundamentally fair trial. Under both state and federal law, although the prosecution may not introduce evidence of an uncharged crime to establish the defendant's bad character or criminal propensity, the prosecution may introduce such evidence if it is offered to prove some relevant issue in the case, such as motive, and the probative value of the evidence exceeds the potential for prejudice towards the defendant. *See* Fed. R. Evid. 403, 404(b).

The trial court is given "broad discretion" regarding the admissibility of such evidence. *United States v. Smith*, 727 F.2d 214, 220 (2d Cir. 1984); *People v. Alvino*, 71 N.Y.2d 233, 242, 525 N.Y.S.2d 7, 11-12 (1987) (if uncharged crime evidence is probative of legally relevant and material issue, then admissibility turns on discretionary balancing of probative value against potential for prejudice).

Petitioner focuses on uncharged crimes and bad act evidence that falls into three main categories: 1) the evidence of a double homicide; 2) petitioner's threats against Marie Somie; and 3) other evidence of prior bad acts or uncharged crimes.

### 1.    Evidence of Another Homicide

The State appropriately introduced evidence of the April 12, 1987 homicide committed by petitioner and his friend, Andre Booker, in order for the jury to understand petitioner's motive for later killing Booker. *See, e.g., People v. Molineux*, 168 N.Y. 264, 293 (1901) (evidence of other crimes may be admitted to show motive).

Petitioner's motive for killing Booker was highly probative. Marie Somie's testimony regarding the earlier double homicide, (R. 150-52), was narrowly directed towards proving that

issue. On direct examination, Somie testified that on May 4 or 5, 1987 petitioner had told her that he intended to kill Booker because he did not want to go back to jail. Petitioner said that he and Booker had shot two people in an alleyway in Brooklyn, and Booker had crashed the getaway car and left petitioner's gun behind. A man named "Sun God" had also been present. Somie testified that petitioner had told her that he feared that Booker might reveal petitioner's role in the shooting if the police caught Booker. This concise and relevant testimony alerted the jury that the explicit purpose of the double homicide evidence was to explain petitioner's motive for killing Booker. The details were no more prejudicial than the crime.

Detective Daniel's testimony concerning the double homicide reiterated facts about the crime that Somie had already described. The detective's testimony corroborated Somie's testimony that the crime that petitioner had told her about had in fact occurred and that petitioner's fear that the police would eventually catch Booker was a reasonable one.

The court's final charge emphasized the limited purpose for which the jury was to use the evidence of the double homicide.


### 2.    Threats Against Witness

The court properly permitted testimony by Marie Somie concerning her fear of petitioner and concerning threats petitioner had made against Somie and her family. The testimony elicited by the prosecutor on direct examination was not extensive and was probative of material issues in the case.

On direct examination, Somie testified that she had left the murder house about two months after the killing of Andre Booker because she feared for her life. She further testified that she was living with her mother, when petitioner, sometime in August, came by the apartment and yelled

43

outside the apartment door. Somie then heard shots fired right outside the apartment building. On another occasion, petitioner came by the apartment and threatened to shoot Somie in front of the bathroom mirror. About three nights after this incident, petitioner telephoned Somie, and when she said she would not see him, he threatened to blow up the block. At that point, Somie contacted the police.

Somie's testimony about petitioner's threats against her explained why, after a delay, she had finally informed the police that her erstwhile boyfriend, petitioner, had murdered Booker—namely, to seek protection for herself. This was a highly relevant credibility issue. Defense counsel in the opening statement told the jury that Marie Somie's motive for going to the police was her jealousy that petitioner had returned to his wife and this motive explained why Somie had not gone to the police originally. It was important for the prosecution to demonstrate why Somie had not gone to the police earlier, how Somie tried to avoid petitioner, and why she finally went to the police—an act that eventually led to petitioner's arrest.

Testimony that the prosecutor obtained on redirect clarified testimony that petitioner himself had elicited on cross-examination. Much of the testimony that petitioner now complains about was properly elicited by petitioner himself, either on cross-examination or re-cross-examination. Defense counsel, on summation, argued that certain aspects of Somie's testimony regarding her fear of petitioner were unbelievable because Somie had not mentioned certain bad acts on direct examination, but only on cross-examination.

Faced with the alleged flagrant brutality of petitioner's murder of Booker, the jury could hardly have been unfairly swayed by Somie's testimony regarding petitioner's threats against her. Moreover, defense counsel in fact argued that Somie's alleged fear of petitioner proved that she was incredible. Counsel asked, that if Somie had been so afraid of petitioner, why had she not

44

contacted the police earlier, and why had she stayed so long with petitioner after the Booker

murder? Defense counsel also noted that the only person to testify regarding petitioner's threats

against Somie was Somie herself. She argued that because no one had corroborated Somie's

testimony regarding petitioner's threats, including Somie's non-testifying mother who had

supposedly heard some of petitioner's threats, Somie should not be believed and her testimony

about the outrageous threats was obviously implausible.

Any possible state law error either in the admission of the threats evidence or in the

omission of specific instructions on the jury's use of this evidence did not deprive petitioner of a

fundamentally fair trial.

### 3. Other Evidence of Prior Bad Acts or Uncharged Crimes

Other bad act evidence was endemic to the case because of its nature. In light of the

overwhelming evidence of petitioner's guilt, any possible state law error in the admission of any of

the objected-to evidence did not deprive petitioner of a fundamentally fair trial. The error, if any,

did not rise to the level of a constitutional violation. *See Dunnigan v. Keane*, 137 F.3d 117, 127

(2d Cir. 1998).

### 4. Charge

The court issued instructions directing the jury not to speculate about Somie's mention of

petitioner's prior incarceration. Petitioner did not express any dissatisfaction with these

instructions. Nor did petitioner ever request that the court revisit this issue with any specificity in

its final charge.

### 5.    Prosecutor's Summation

Petitioner attacks certain of the prosecutor's comments on summation, and argues that these comments amounted to such egregious misconduct that petitioner was denied a fair trial. The claim is meritless.

In order for error in a prosecutor's summation to warrant the granting of habeas relief to a state prisoner, a federal court must find that the prosecutor's "comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48, 94 S. Ct. 1868, 1873 (1974)). The "[c]ourt must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly." *United States v. Young*, 470 U.S. 1, 12, 105 S. Ct. 1038, 1044 (1985).

The prosecutor's remarks could have plausibly been found to be a fair response to defense counsel's summation and fair comment on the evidence. Defense counsel on summation vigorously attacked the credibility of Marie Somie, repeatedly accusing Somie of being a "liar" and of not telling the truth. She offered her assessment of the kind of person Marie Somie was, labeling her "quite cold," "very intelligent," "secure, confident and cool," and "somebody this cool." Counsel portrayed Somie as a deliberate and calculating liar who was "dishonoring her oath and trying to get [something] over on" the jury. She repeatedly denigrated Somie's testimony about why she had not informed the police sooner about the murder and why she was afraid of petitioner.

In response, the prosecutor explained on summation that Somie, who knew that petitioner had not hesitated to kill his best friend in order to avoid being caught by the police, did not immediately go to the police because she knew that if she did so, petitioner might kill her; Somie

also knew that if she did not go to the police, petitioner might kill her anyway because she knew too much about Booker's death. The prosecutor's florid, characterization of Somie as "walking a tight rope between life and death, because she [knew] all this," was not excessive given the facts and defense counsel's tactics.

Defense counsel devoted much of her summation to attacking Somie's testimony that petitioner had admitted committing a double homicide with Booker, an incident which provided petitioner's motive for killing Booker, and also to arguing that petitioner would not have killed Booker because Booker was his friend. Responding, the prosecutor argued that the kind of person who would kill his closest friend in the basement of his mother's house and then drive to Brooklyn to dump the body would have to be a person who had a very strong motive and who was going to try to cover his tracks. The prosecutor argued further that the evidence showed that, of the people living at the Peekskill Street house where defense counsel conceded Booker had been killed, petitioner was the only person who had the motive to commit the crime. Admittedly, the prosecutor described petitioner in terms that echoed defense counsel's own characterization of Marie Somie—a cold and calculating individual. It was appropriate to argue that because petitioner had committed the double murder with Booker, had expressly stated that he did not want to go to jail as a result of having committed murder, and had already moved out of Brooklyn to avoid detection, it was petitioner, and not Enrico as the defense proposed, who fulfilled the necessary criteria for Booker's killer.

The prosecutor's summation was on the whole proper. It did not exceed the wide latitude allowed during closing argument. *See, e.g., United States v. Salameh*, 152 F.3d 88, 138 (2d Cir. 1998) (government is given "bounds of broad latitude" within which to suggest reasonable inferences from the evidence).

### D.    Proof Beyond a Reasonable Doubt of Inculpatory Statements

Petitioner claims that, in violation of his constitutional right to due process, 1) the trial court erred in refusing to instruct the jurors specifically that the prosecution had to prove beyond a reasonable doubt that petitioner had made the statements attributed to him by Marie Somie, and 2) the court's charge improperly removed from the jury's consideration the factual issue of whether petitioner had made the disputed statements to Marie Somie.  Respondent argues that the requested instruction is not required under federal law, and that any error was harmless.

Petitioner raised this same two-part charge claim in Point IV of his Appellate Division brief on direct appeal.  The Appellate Division did not specifically address this claim in its decision. Rather, after discussing at length petitioner's claim regarding the trial court's omission of an accomplice corroboration instruction, it held that the remaining claims that petitioner had raised in his brief were "either unpreserved for appellate review or without merit." *People v. Young*, 235 A.D.2d 441, 444, 653 N.Y.S.2d 124, 127 (2d Dep't 1997).  The significance of that ruling has already been discussed.

The prosecution's case rested primarily on the testimony of Marie Somie.  Somie testified that Young told her that he was going to kill Booker; that he asked Somie to lock the door on his way down to the basement; that he later told her he had kicked Booker in the mouth and strangled him to death; and that he told her that another man, Gale, was going to help him dispose of Booker's body and asked her to leave the house.

Somie also testified as to Young's motive for killing Booker.  She testified that Young told her that Booker had dropped Young's gun, which had Booker's fingerprints on it, at the scene of an uncharged double homicide that had occurred approximately three weeks earlier.  She testified that Young had informed her that he was afraid that the police would arrest Booker and that

48

Booker would implicate him in the crime.

At trial, the court charged the jury as follows: "In order for you to find this defendant guilty of this crime, the Prosecution [must] prove from all the evidence in the case beyond a reasonable doubt . . . that on or about May 6, 1987, in the County of Kings, the defendant strangled Andre Booker."

As to the inculpatory statements allegedly made by petitioner to Somie, the court instructed the jury that:

> One of your chief functions as jurors . . . is to determine the credibility of witnesses, because the facts that you have to find as judges of the facts depends, upon the credibility of the witnesses. It depends upon the people you have heard and you alone have the power to say whether a witness is truthful or not truthful and then what weight you should give to that person's testimony.

The court also instructed the jury that, under New York Criminal Procedure Law Section 60.50, "A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed." N.Y. Crim. Proc. Law § 60.50. It added:

> If such additional proof satisfies you that the crime charged was a real crime committed by someone, then you may consider his statements together with all of the other evidence in the case arriving at your verdict . . . . If you decide that the additional proof that was discussed here does not satisfy you that the crime charged was committed by someone then, you must disregard the defendant's alleged statements entirely.

Defense counsel objected to the charge and requested that the jury receive the specific instruction that they must be convinced beyond a reasonable doubt that petitioner in fact made the inculpatory statements. The prosecution objected. The court did not make the requested instruction, instead reiterating that "each and every aspect of the case must be proved . . . beyond a reasonable doubt."

Based on the court's refusal to give the requested instruction, defense counsel moved for a mistrial.

"A jury charge in a state trial is normally a matter of state law and is not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive petitioner of a federal constitutional right." *United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974), *cert. denied*, 423 U.S. 856 (1975).

The habeas court, in determining whether there is error of constitutional magnitude, "considers the absence of the requested instruction in the context of the overall charge given and the events at trial." *Munoz v. Riley*, CV-91-2730, 1996 U.S. Dist. LEXIS 20405, at *8 (E.D.N.Y. 1996) (citing *Cupp v. Naughten*, 414 U.S. at 146-47).

The due process clause requires that a criminal defendant be convicted only if the prosecution proves "beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 2327 (1977); *see also In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970) (beyond a reasonable doubt standard has "constitutional stature"). The jury must be instructed accordingly. *See United States v. Desimone*, 119 F.3d 217, 227 (2d Cir. 1997) ("[J]ury instructions must be viewed in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable-doubt concept to the jury.").

If a confession is the only evidence that bears upon an element of the crime, the confession must be proven beyond a reasonable doubt. *See United States v. Bryce*, 208 F.3d 346, 355 (2d Cir. 1999). If, however, there is substantial independent evidence that proves guilt beyond a reasonable doubt, the confession and any corroboration need not be proven beyond a reasonable doubt. *See Opper v. United States*, 348 U.S. 84, 93, 75 S. Ct. 158, 164 (1954) (holding that corroborating evidence is adequate if it "supports the essential facts admitted sufficiently to justify a jury

50

inference of their truth"); *Smith v. United States*, 348 U.S. 147, 156, 75 S. Ct. 194, 199 (1954) (holding that corroborative evidence "does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence *as a whole* proves beyond a reasonable doubt that defendant is guilty") (emphasis supplied).

A confession is not an element of the crime of murder. Rather, a confession is evidence that may bear upon relevant elements of the crime, and so need not be proven to have occurred and be truthful beyond a reasonable doubt if there is other evidence supporting the elements of the crime. There is no federal requirement that the reliability of a confession, or the testimony of the witness to whom the confession was made, be proven beyond a reasonable doubt. The admissibility of a confession is determined by the judge. The jury must determine the weight to give the confession in light of all of the circumstances. *Cf.* 18 U.S.C. § 3501(a) (providing that the judge must determine the voluntariness of a confession given to a law enforcement official as a condition of admissibility, but once found voluntary, the jury should weigh the evidence as it sees fit under all the circumstances).

There was other evidence besides Young's confession that could be properly weighed by the jury in determining petitioner's guilt. This included evidence from Booker's body—rope burns, a lacerated lip—and fibers that matched Young's basement carpet both in their optical and chemical properties. Somie testified that she saw petitioner purchase rope and later saw it in petitioner's basement. Somie also testified that she saw blood and saliva on petitioner's shoe. Evidence of dried blood was found in petitioner's basement; there was evidence that petitioner cleaned the carpet the day after the murder.

Telephone records confirmed that petitioner called Gale, who was to help remove the body. Two witnesses testified that they saw Gale's van at petitioner's house.

Petitioner gave Somie a gold chain that belonged to Booker after the murder. The chain was admitted into evidence. Somie's testimony as to petitioner's motive was supplemented by evidence of Booker's fingerprints on petitioner's gun at the scene of the double homicide.

The jury was instructed to weigh all of this evidence in addition to the confession in determining whether petitioner had committed the crime beyond a reasonable doubt. This was consistent with federal law, as was the jury's ultimate conclusion of petitioner's guilt.

New York State law may require the requested instruction. New York Criminal Jury Instruction 11.10 reads:

> [D]efendant contends that he never made the statement attributed to him by [witness name]. . . . Whether or not the defendant, in fact, made the statement attributed to him is a question of fact for the jury to be decided by you on the basis of all the evidence in the case.
> I instruct you that the defendant has no burden to prove that he did not make the statement.
> The burden of proof to establish that the defendant did make the statement is on the People. *The People must prove that fact to your satisfaction beyond a reasonable doubt.*

New York Criminal Jury Instructions § 11.10 (1st ed. 1983). *Compare People v. Hardy*, 124 A.D.2d 676, 677, 508 N.Y.S.2d 462, 463 (2d Dep't 1986) (jurors must be instructed "that they could not consider the statements unless the People established beyond a reasonable doubt that the statements were actually made") *with People v. Foss*, 267 A.D.2d 505, 700 N.Y.S.2d 499 (3d Dep't 1999) (jury need not be instructed that "every fact established at trial must be proven beyond a reasonable doubt").

This protection, if it exists in state law, exceeds that provided by the federal constitution, which requires only proof beyond a reasonable doubt of all elements of a crime—operative

52

facts—not of confessions used as evidence. Evidence proves or disproves an operative fact; it is not itself an operative fact. *See generally* Jerome Michael & Mortimer J. Adler, The Nature of Judicial Proof (1931); Jerome Michael & Mortimer J. Adler, The Trial of an Issue of Fact, 34 Colum. L. Rev. 1224, 1252 (1934); John H. Mansfield, et al., Cases and Materials on Evidence 11-14 (9th ed. 1997).

New York State may afford criminal defendants greater procedural and substantive protections—by legislation and judicial decision—than the federal system in this as well as a number of other ways. "It is elementary that States are free to provide greater protections in their criminal justice system than the Federal Constitution requires." *California v. Ramos*, 463 U.S. 992, 1013-14, 103 S. Ct. 3446, 3460 (1983). While the failure to give the requested instruction might provide grounds for relief in a New York State collateral proceeding, it does not provide grounds for relief in a federal habeas corpus proceeding. Standards for collateral attack need not be the same in both a federal court and in the local district within which it sits. *See, e.g., United States v. Frady*, 456 U.S. 152, 159-60, 102 S. Ct. 1584, 1590 (1982) (rejecting contention that equal protection requires substantive standards in federal habeas corpus cases to be the same as those used in the local jurisdiction's equivalent collateral attack statute).

The trial court's extensive instructions, both regarding the jury's task of determining the witnesses' credibility and regarding the prosecution's burden of proving each element of the case beyond a reasonable doubt were adequate.

The instructions suggested usual common sense tests for determining credibility, and separately noted that, in determining the credibility of witnesses, the jury could consider whether the witness was interested in the outcome of the trial. The court went on to instruct the jury regarding the presumption of innocence and the prosecution's burden of proof.

In reviewing the elements of the crime, the court repeated that the jurors had to find that the prosecution had proved each element beyond a reasonable doubt before they could return a verdict of guilty. Finally, after the court had finished delivering its charge and had consulted with the attorneys regarding any objections, the court again instructed the jurors that it wanted to remind them "that each and every aspect of the case must be proved, must have been proved beyond a reasonable doubt."

Because the charge conveyed to the jurors the proper standard of proof, there was no need for the court to charge the jurors specifically that the State had to prove beyond a reasonable doubt that petitioner had made the statements attributed to him. *See People v. Sharlow*, 185 A.D.2d 289, 290, 585 N.Y.S.2d 799, 800 (2d Dep't 1992). The omission of the specific instruction that petitioner now relies upon did not prejudice petitioner. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977) (noting that an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law); *Carroll v. Hoke*, 695 F. Supp. 1435, 1437 (E.D.N.Y. 1988) (noting that standard on *habeas* review is particularly rigid where claim of prejudice stems from *failure* to give an instruction), *aff'd without op.*, 880 F.2d 1318 (2d Cir. 1989).

When the charge is viewed as a whole, petitioner's additional claim—that the court erred by allegedly implicitly communicating to the jury that the court had already determined that petitioner had made the disputed statements—is baseless. In light of the court's repeated admonitions that the jurors were the *sole* factfinders and that the court had *no* opinion concerning the evidence, and in light of the court's use of "alleged" when discussing petitioner's statements, the jurors could not have concluded that the court had already resolved for them the crucial and heavily contested issue of whether Somie was truthful in her testimony that petitioner had confessed to her.

54

Early in its final charge, the court reminded the jurors that they were not to consider,

> anything that I may say to you in the course of this charge as
> indicative that I hold any opinion on this case. I assure you I have
> none whatsoever. I have no power to tell you what the facts are, or
> to tell you that one thing is more important than something else.
> Or what witness you should believe, or what witness you should
> not believe. Those are all matters within your exclusive powers as
> the judges of the facts.

Having prefaced the balance of its charge with this admonition, the court went on to instruct the jurors regarding the confession corroboration requirement of section 60.50 of the New York Criminal Procedure Law and to reiterate that the jurors alone were empowered to determine credibility.

The jurors could not fail to apprehend that Somie's testimony was the heart of the State's case: if she had not been believed, petitioner would not have been convicted.

Finally, lest there be any doubt, the corpus delicti rule requiring some proof of the crime in addition to a confession or admission has no applicability here. "The policy [in New York] . . . is to prevent a conviction based upon a confession of a crime when in fact no crime has been committed by anyone." Jerome Prince, Richardson on Evidence 557 (10th ed. 1973). "[I]n *homicide* the fact of death, whether or not feloniously caused, is the corpus delicti." John Henry Wigmore, Evidence in Trials at Common Law 527 (James H. Chadbourne rev. 1978) (emphasis in original); *see also, e.g., Regina v. Onufrejczyk,* 1 All E.R. 247 (Ct. Crim. App. Eng. 1955) ("Corpus delicti means, first, that a crime has been committed, that is to say, that the man is dead, and that his death has been caused by crime."); John H. Mansfield, et al., Cases and Materials on Evidence 41 (9th ed. 1997).

The rule has some utility in preventing an unfounded conviction wrung out of the defendant by torture—a favorite medieval practice, now somewhat less prevalent—or forced

from a defendant's lips by some psychological quirk, such as a desire for publicity or need to be punished. It was dusted off recently by the Court of Appeals for the Second Circuit in a discussion of sufficiency of proof:

> Traditionally, the corroboration rule, historically termed the *corpus delicti* rule, applied only to a defendant's confession, but over time has been expanded to apply to admissions and exculpatory statements. . . .Historically, and still in many jurisdictions, courts adhering to the corroboration rule demanded that prosecutors present evidence other than the defendant's confession, admission, or exculpatory statement to prove the *corpus delicti* or "body of the crime." . . . Generally, the *corpus delicti* is understood to include the actual injury or harm, i.e., the dead body in a murder case, and proof that the harm or injury was caused by defendant's criminal activity. . . .
>
> [W]e have held: "[T]he modern corroboration rule requires only that there be 'substantial independent evidence which would tend to establish the trustworthiness of the statement.'" The corroboration rule thus serves a "gatekeeping function" in that it prevents juries from convicting on unreliable evidence.

*United States v. Irving*, 432 F.3d 401, 408 (2d Cir. 2005) (citations omitted).

Here the corpora delicti were proved beyond peradventure: one body had a bullet to the back of its head; the other corpse had rope marks around its neck and bruises on the body, supporting the medical conclusion of death by nonsuicidal strangulation.

## E.    Insufficient Evidence

Petitioner claims that he was deprived of due process because the evidence was legally insufficient to support his conviction of second-degree murder in that the State did not provide sufficient evidence of venue. He raised this same legal sufficiency claim as the first point in his brief to the Appellate Division on direct appeal. The Appellate Division did not address the legal sufficiency claim. Rather, after discussing at length petitioner's claim regarding the trial

court's omission of an accomplice corroboration instruction, the Appellate Division simply held that the remaining claims that petitioner had raised in his brief were "either unpreserved for appellate review or without merit." *People v. Young*, 235 A.D.2d 441, 444, 653 N.Y.S.2d 124, 127 (2d Dep't 1997). The significance of that ambiguous ruling has been noted above.

A habeas petitioner challenging the sufficiency of the evidence underlying his state conviction bears a heavy burden. *See, e.g., Einaugler v. Sup. Ct. of State of New York*, 109 F.3d 836, 840 (2d Cir. 1997); *Dey v. Scully*, 952 F. Supp. 957, 976 (E.D.N.Y. 1997) ("A habeas petitioner raising a sufficiency challenge bears a heavy burden"). The task before the federal habeas court is to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found "the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

In this case, the State had to prove three essential elements: 1) that petitioner committed an act against the victim; 2) that petitioner, when committing the act, had the requisite intent to cause the victim's death; and 3) that petitioner's act in fact caused the victim's death. The State proved those elements with ample credible evidence of petitioner's guilt.

Petitioner argues that he is entitled to habeas relief because the State failed to provide sufficient evidence of venue. Under New York law, venue is not itself an element of the crime of second-degree murder. *See People v. Chaitin*, 94 A.D.2d 705, 705, 462 N.Y.S.2d 61, 62 (2d Dep't 1983) (geographical jurisdiction to prosecute is not itself an element and need only be established by preponderance of evidence), *aff'd*, 61 N.Y.2d 683, 472 N.Y.S.2d 597 (1984); *cf. Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) (noting that considerable doubt exists as to whether a venue issue even raises a Sixth Amendment claim). Rather, rules pertaining to the

issue of venue are found in Section 20.40 of the New York Criminal Procedural Law.

That section provides that a person may be convicted in an appropriate criminal court of a particular county, when, even though none of the conduct constituting such offense may have occurred within such county, the offense committed "was one of homicide and the victim's body or a part thereof was found in such county . . . ." N.Y. Crim. Proc. Law § 20.40(2)(b). The reason for the rule permitting venue to be wherever the body is found is illustrated by this case where the body was dumped in another county; if it could not be proved where the murder actually took place, no venue might be suitable. Here the prosecution took place in a county near where the murder occurred; and where defendant himself had dumped the body. Defendant was not unfairly tried far from his residence or the site of the crime.

When a defendant requests that the court instruct the jury to determine the factual predicate for the venue, the jury must determine whether the State has proved by a preponderance of the evidence that venue is proper either because the crime was committed there or because one of the statutory exceptions is applicable. *People v. Moore*, 46 N.Y.2d 1, 6-7, 412 N.Y.S.2d 795, 798 (1978). Where, as here, a defendant does not make such a request, the jury need not consider the issue. Given that the jury in petitioner's case was not even asked to weigh the venue issue, it would make no sense for this court, reviewing petitioner's conviction by the federal habeas standard, to do so. The reason venue was not raised by petitioner was that it was never in issue under New York law.

In any event, the State provided overwhelming proof that Booker's corpse was found in a vacant lot in the East New York section of Brooklyn. Thus, the evidence unequivocally satisfied the venue requirement of New York Criminal Procedure Law. *Cf. Neder v. United States*, 527 U.S. 1, 14-17, 119 S. Ct. 1827, 1836-38 (1999) (although trial court failed to charge jury on one

58

element of offense, error was harmless since there was overwhelming evidence of that element).

### F.    False Testimony

Petitioner claims that Marie Somie "committed perjury when she testified that she had no involvement in Andre [Booker]'s killing, other than knowing about it and not going to the police before it took place" (Pro Se Petition at 2 ¶ 5), and that such alleged perjury denied him due process (Newman Supplemental Brief at 6). The claim is meritless and does not present any basis for habeas relief.

The credibility of this key witness was fully explored at the trial. Minor inconsistencies in testimony are to be expected in a case such as this one. There is not the slightest hint of suborning by the prosecutor.

Petitioner raises the same claim that he raised as the second claim in support of his second motion to vacate his judgment of conviction—namely, that an allegedly newly discovered photograph, depicting Marie Somie and Enrico Young wearing the victim's jewelry, was sufficient to establish Somie's accomplice status and to cause the jury to acquit petitioner. *See* BY Booker Mem. at 18-19; Newman Supplemental Brief at 7.

In making this claim in state court, petitioner did so under Section 440.10(1)(g) of the Criminal Procedural Law. That section provides that a judgment of conviction may be vacated on the ground that:

> New evidence has been discovered since the entry of a judgment based upon a verdict of guilty at trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based on such ground must be made with due diligence after the

discovery of such alleged new evidence.

N.Y. Crim. Proc. Law § 440.10(1)(g). Petitioner did not claim in state court, and does not now claim in federal court, that, in light of this allegedly newly discovered evidence, his continued incarceration would deprive him of any specific federal constitutional right. To the extent that petitioner's application for relief relies on this claim of newly discovered evidence, the application is denied because, among other reasons, the claim is unfounded.

It is appropriate for a state to insist that a petitioner seeking to overturn his conviction on the basis of new evidence demonstrate the probability that, had such "new" evidence been received at trial, the verdict would have been more favorable to the petitioner. *See* N.Y. Crim. Proc. Law § 440.10(1)(g), *supra.* Petitioner failed to satisfy this requirement. Given Somie's relationship to petitioner and his brother it was entirely natural that they would give her a gift of part of their loot. Petitioner's newly discovered evidence claim is rejected.

### G.     Inadequacy of Trial Counsel: Alibi

Petitioner claims that he was denied the effective assistance of trial counsel. He charges that trial counsel's representation was deficient in that counsel unreasonably failed to present an alibi defense by calling petitioner's family members to testify that they were with him at his son's birthday party in Brooklyn at the time of the murder and by placing in evidence a photograph allegedly showing petitioner and his family in front of his son's cake.

Petitioner raised this same claim in his second C.P.L. § 440.10 motion to vacate his judgment of conviction. The Supreme Court rejected the claim due to petitioner's failure to comply with a state procedural rule. This court is now barred from reviewing petitioner's claim due to that independent and adequate state ground.

The Supreme Court concluded in the alternative that petitioner's claim of ineffective assistance of counsel was meritless. Petitioner in his present petition fails to establish that that decision was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

A federal court, when reviewing a habeas petition from a state prisoner, generally cannot consider the merits of a federal constitutional claim when the state court refused to review the merits of the claim based on an adequate and independent state ground. *See Lambrix v. Singletary*, 520 U.S. 518, 522-23, 117 S. Ct. 1517, 1522 (1997); *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2553-54 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81-91, 97 S. Ct. 2503-09 (1977). In this case, the Supreme Court rejected petitioner's claim of ineffective assistance of counsel because petitioner "failed to show that he could not have raised the issue of ineffective assistance of counsel in his previous CPL 440.10 motion." *See* Memorandum Decision and Order at 5, 10. Section 440.10(3)(c) of the New York Criminal Procedure Law provides that a court may deny a C.P.L. § 440.10 motion when the petitioner could have raised the issue in a previous C.P.L. § 440.10 motion and unjustifiably failed to do so. *See People v. Sanchez*, 212 A.D.2d 487, 488, 624 N.Y.S.2d 803, 803 (1st Dep't 1995); *People v. Thomas*, 147 A.D.2d 510, 512, 537 N.Y.S.2d 600, 601 (2d Dep't 1989).

Because the state court invoked a state procedural bar to the review of the merits of petitioner's claim, this court may refuse to review the merits of petitioner's claim based on this independent and adequate state ground. *See e.g., McKethan v. Mantello*, 292 F.3d 119, 122-23 (2d Cir. 2002) (right-to-be-present claim was procedurally barred from federal habeas review,

because state court had rejected claim pursuant to N.Y. Crim. Proc. Law § 440.10[3][c]).

Adequate cause for the procedural default and actual prejudice resulting from the default was not shown. A fundamental miscarriage of justice would not result if the claim were not considered. *See Epps v. Comm'r*, 13 F.3d 615, 617-18 n.1 (2d Cir.) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991)), *cert. denied*, 511 U.S. 1023, 114 S. Ct. 1409 (1994).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: 1) his attorney's performance fell below an objective standard of reasonableness and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984). *See also Dean v. Clinton Corr. Facility*, 93 F.3d 58, 60 (2d Cir. 1996), *cert. denied sub nom. Dean v. Senkowski*, 519 U.S. 1129, 117 S. Ct. 987 (1997); *Kieser v. New York*, 56 F.3d 16, 18 (2d Cir. 1995); *Cuevas v. Henderson*, 801 F.2d 586, 589 (2d Cir. 1986), *cert. denied*, 480 U.S. 908, 107 S. Ct. 1354 (1987). There is an assumption that counsel's conduct fell within the wide range of reasonable assistance. For petitioner to prevail on his ineffective assistance claim, he must overcome the working hypothesis that the challenged actions, under the circumstances, might be considered sound trial strategy. *Dean v. Clinton Corr. Facility*, 93 F.3d at 61. The two-prong *Strickland* standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382, 106 S. Ct. 2574, 2586 (1986).

Petitioner has failed to show that his trial counsel's performance was deficient, or that any alleged deficiency prejudiced his defense. The record establishes that petitioner's skilled trial counsel, Edna Schwartz of The Legal Aid Society, competently and zealously represented her client. Ms. Schwartz aggressively argued that evidence against petitioner should be

excluded, raised appropriate objections, vigorously cross-examined prosecution witnesses, mounted a defense case, and forcefully commented on the evidence during summation. Petitioner clearly received the professional and effective representation to which he was entitled. Petitioner argues that counsel was deficient in that she failed to call petitioner's family members to testify that they were with him at his son's birthday party in Brooklyn at the time of the murder. Petitioner did not offer the Supreme Court, and does not offer now, any affidavit from any of petitioner's family members alleging either that they were at his son's birthday party with petitioner at the time of the murder, or that they would have so testified if they had been called by defense counsel to testify at petitioner's trial. The Supreme Court concluded that counsel's failure to call family members to testify had been part of a trial strategy (Memorandum Decision and Order at 10).

The State court's conclusion was supportable. First, defense counsel stated on her summation in this case that petitioner's family members did not remember what had happened on the day of the crime—a statement strongly suggesting that counsel had in fact spoken with family members and that they had no relevant testimony to offer. The record of petitioner's 1989 trial (his first trial for the Booker murder) shows that his mother, Birdie Young, his older sister Laureen Young, and his twin sisters, Toya and Janet Keyes, had testified then on his behalf. *None* testified that on May 6, 1987, they were with petitioner at his son's birthday party in Brooklyn. Although Sylvia Young, petitioner's wife, testified at the 1989 trial that petitioner had been at their son's birthday party on May 6, 1987, she made no mention of any other member of petitioner's family having attended the party. When petitioner himself testified on his own behalf at the 1989 trial, he claimed that he had been attending his son's birthday party on May 6, 1987, but he made no mention of any other member of his family also having been

there.

Petitioner's trial counsel cannot be faulted for failing to call to the stand witnesses who either did not exist or would have refused to lie to keep a multiple murderer at liberty. The evidence presented to the Supreme Court fully supports that court's conclusion that defense counsel's failure to call petitioner's family members to the stand was based on trial strategy. Such a strategic decision did not constitute ineffective assistance.

The family members would have been extensively cross-examined on the issue of their failure to testify at petitioner's 1989 trial regarding the alibi defense. The jury would probably have discounted this weak testimony. Such a weak ploy might well have strengthened a juror's resolve to convict petitioner based on the proof presented by the State.

Petitioner also claims that his counsel erred by failing to introduce at trial a photograph allegedly depicting petitioner, his wife, his son, and family member in front of his son's birthday cake. In his C.P.L. § 440.10 motion, petitioner contended that his trial counsel had been provided with this photograph. Petitioner's papers in state court did not establish that counsel had possessed such a photograph and could therefore be criticized for not trying to introduce it at trial. Petitioner's papers were also insufficient to establish that but for counsel's failure in this regard, the verdict would have been different.

In state court, petitioner did not support his assertions with any sworn allegations, nor does he do so now. Moreover, counsel at petitioner's first trial in 1989, Leo Kimmel, Esq., who mounted an extensive alibi defense, including calling petitioner to testify on his own behalf, never introduced such a photograph into evidence, and neither petitioner nor his wife, while on the stand in 1989, made any mention of the photograph. Unless the photograph carried a digital date generated by the camera or there were other indicia of date, the jury would have had no

reason to believe from the photograph alone that it had been taken on May 6, 1987 at the time of the murder.

### H.     Other Possible Claims

No other possible claim of a constitutional violation has any merit. The defendant was tried with excellent counsel defending him. No substantial error was committed. No constitutional error has been demonstrated. The prosecutor acted appropriately. The judge's rulings were fair.

## IX.     Analysis of Contentions in Graham Murder Case

### A.     Uncharged Robbery Evidence to Prove Motive

Petitioner raises essentially the same claim that he raised as Point I in his main brief to the Appellate Division on direct appeal—namely, that petitioner was deprived of his due process right to a fair trial because the trial court first allowed the State to introduce evidence of an uncharged robbery and details of that robbery to establish petitioner's motive for murdering Bobby Graham and then delivered insufficient limiting instructions to the jury concerning the use of this evidence. The Appellate Division found the claim to be without merit. *People v. Young*, 187 A.D.2d 548, 590 N.Y.S.2d 756 (2d Dep't 1992).

Because petitioner fails to demonstrate that the Appellate Division's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, his request for habeas corpus relief, insofar as it is based on this claim, should be denied. *See* 28 U.S.C. § 2254(d)(1) (application for writ of habeas corpus shall not be granted unless petitioner

demonstrates that adjudication of claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"); *Joseph v. McGinnis*, 249 F. Supp. 2d 236, 240-41 (S.D.N.Y. 1999) (employing AEDPA standard of review and rejecting state prisoner's claim that habeas relief was warranted because uncharged crime evidence had been admitted at trial).

An erroneous state evidentiary ruling does not automatically rise to the level of a federal constitutional violation. *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988). The petitioner must demonstrate not only that the evidence was erroneously admitted, but also that the purported error was serious enough to deny him a fundamentally fair trial. *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

The Court of Appeals for the Second Circuit has described the standard for federal habeas review for claims of improperly admitted evidence:

> whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been "crucial, critical, highly significant."

*Collins v. Scully*, 755 F.2d at 19 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982).

The admission of the challenged evidence was proper under both state and federal evidentiary law. It did not result in the denial of a fundamentally fair trial. Although the prosecution may not introduce evidence of an uncharged crime to establish the defendant's bad character or criminal propensity, it may use such evidence if it is offered to prove some relevant issue in the case, such as motive, and the probative value of the evidence exceeds the potential for prejudice towards the defendant. *See* Fed. R. Evid. 403, 404(b); *United States v. Pipola*, 83

F.3d 556, 565 (2d Cir.) (noting that the Second Circuit has adopted an "inclusionary interpretation" of the rule), *cert. denied*, 519 U.S. 869, 117 S. Ct. 183 (1996); *People v. Molineux*, 168 N.Y. 264, 293 (1901). The trial court has "broad discretion" regarding the admissibility of such evidence, and the court's ruling will not be overturned absent a clear abuse of discretion. *United States v. Smith*, 727 F.2d 214, 220 (2d Cir. 1984); *see People v. Alvino*, 71 N.Y.2d 233, 242, 525 N.Y.S.2d 7, 11-12 (1987) (if uncharged crime evidence is probative of a legally relevant and material issue, then admissibility turns on discretionary balancing of probative value against potential for prejudice).

The trial court appropriately exercised its discretion in allowing the State to introduce testimony that petitioner had committed a robbery on Long Island with Calvert "Bobby" Graham. The evidence explained petitioner's motive for killing Graham—who, apparently, was a friend petitioner saw regularly for one month prior to the murder. Robert Graham, the victim's younger brother, testified that a week before Calvert "Bobby" Graham was killed, Bobby Graham was wearing new gold chains and had more money than usual. Robert Graham also testified that petitioner had told him that he (petitioner) and Bobby Graham had committed a robbery on Long Island.

Michelle Haile testified that before Graham's death, petitioner had told her that he would have to "eliminate" Graham because Graham had not given petitioner his share of the proceeds of the robbery. Both Haile and Marie Somie testified that after Graham's death, petitioner had told each of them that he killed Graham in a dispute over the robbery proceeds. This testimony concerning the earlier robbery established petitioner's motive for killing Graham.

On direct appeal and in his pro se petition for habeas relief, petitioner argued that the motive for the murder stemmed from the simple fact that Graham owed petitioner money, and not

67

the fact that that money was connected to the Long Island robbery. That would hardly explain why petitioner had taken the drastic step of killing his friend. The motive plausibly relied upon by the prosecutor rested on the fact that the money owed was a fruit of the Long Island robbery the two men had committed together. Graham was supposed to sell petitioner's portion of the drugs stolen on Long Island and to give to petitioner his proper share of the proceeds. Graham failed to do this. In killing Graham, he was exacting his revenge against a partner in crime who, petitioner believed, had double-crossed him. *See Williams v. Armontrout*, 912 F.2d 924, 930 (8th Cir. 1990) (defendant was tried for murder; evidence of defendant's involvement in prior burglary of doctor's office, killing of doctor, and attempt to steal controlled substance was properly admitted, because evidence showed defendant's motive for killing victim, a witness to prior burglary and murder), *cert. denied*, 498 U.S. 1127, 111 S. Ct. 1092 (1991); *see also Bossett v. Walker*, 41 F.3d 825, 829-30 (2d Cir. 1994) (evidence of drug-dealing was probative of hostile relationship between defendant and murder victim and thus was admissible), *cert. denied*, 514 U.S. 1054, 115 S. Ct. 1436 (1995); *United States v. McKinney*, 954 F.2d 471, 480 (7th Cir.) (evidence that victim had botched a drug transaction in which defendant had also participated was admissible at defendant's trial for conspiring to murder victim because it was relevant to establishing defendant's anger at victim and his motive for murder), *cert. denied*, 506 U.S. 1023, 113 S. Ct. 662 (1992).

It is petitioner's contention that evidence of the Long Island robbery was irrelevant to his motive for Graham's murder and that "[t]he only relevant robbery was the one allegedly committed against [petitioner] by Graham." Petitioner's argument that the prosecution should have been allowed to elicit testimony concerning only the "victim's robbery" of "[petitioner's] property" is unpersuasive. Such selective parsing of the evidence was likely to have misled the jury. Petitioner insists that he should have been portrayed as a justifiably outraged innocent victim

of a violent crime perpetrated against him by Graham. This picture need not have been the one painted by the prosecution with the colors at hand.

Petitioner was no ordinary citizen who was in lawful possession of some innocuous "property" and who was inexplicably victimized by Bobby Graham. Rather, petitioner was arguably angry with Graham, because Graham had failed to give petitioner money from the sale of drugs, which both men had stolen together from the occupants of a Long Island house. Contrary to petitioner's suggestion, the prosecution had no duty to spin the evidence to cast petitioner in a sympathetic light.

### B.    Prejudicial Details of Uncharged Crime

Petitioner now claims, as he did on direct appeal, that evidence of certain details surrounding the Long Island robbery—namely, that petitioner stabbed a dog in the head and shot people during the commission of the crime—were improperly admitted.

The testimony concerning the dog was properly admitted because the dog was an identifying factor of the robbery that petitioner and Graham had committed in October 1986. Haile knew about the dog and the date of the robbery, while Somie and Robert Graham knew only that petitioner had stabbed a dog during the robbery. Testimony concerning the dog, therefore, showed that all three witnesses were referring to the same robbery.

The State's evidence that petitioner was the person who had killed Graham rested on petitioner's confessions to Michelle Haile and Marie Somie and on the fact that petitioner had a motive for the murder. The evidence of petitioner's statement to the prosecution witnesses—that he had stabbed a dog during the Long Island robbery—was relevant to both of these issues; the admission of this evidence cannot provide a basis for habeas corpus relief. *See Estelle v. McGuire,*

69

502 U.S. 62, 69-70, 112 S. Ct. 475, 481 (1991) (where prejudicial evidence is relevant to an issue in the case, its admission does not violate a defendant's right to due process).

The trial court limited the prosecutor's proof of motive through testimony of the victims of the Long Island robbery and any police reports about that robbery. The prosecutor was only permitted to establish that the Long Island robbery had occurred, and had been committed by petitioner and Graham together, through the testimony of Haile, Somie, and thirteen-year-old Robert Graham regarding what petitioner had told them about the robbery. The more details that petitioner had related to these witnesses about the robbery and the greater the degree to which the details corresponded to those he had related to the witnesses, the greater the probability that 1) petitioner had in fact described to these witnesses a robbery, 2) the robbery he described had actually occurred, and 3) he had in fact committed the robbery with Graham. Thus, the fact that petitioner told all three witnesses (Haile, Somie, and Robert Graham) that, during a robbery committed with Calvert "Bobby" Graham, he (petitioner) had stabbed a dog in the head, increased the probability that petitioner had in fact committed the particular robbery which provided the motive for his subsequent murder of Bobby Graham.

Petitioner's unpreserved allegation of prejudice deriving from Somie's testimony concerning petitioner's having shot people during the robbery is also meritless. The prosecutor did not intentionally elicit this information from Somie. Rather, Somie volunteered it as an afterthought to her testimony that petitioner had told her that he stabbed a dog in the head because it would not stop barking. The prosecutor did not intentionally exceed the trial court's protective *Molineux* ruling.

The prosecutor did not mention the shooting in his opening statement, did not ask any follow-up questions during Somie's direct examination regarding Somie's comment about the

shooting, did not mention it on summation, did not ask any other witnesses if petitioner had said the same thing to them, and did not otherwise seek to utilize Somie's unsolicited comment at trial. Petitioner was not unduly prejudiced by the isolated remark; it did not rise to the level of a constitutional error. *See Arroyo v. Walker*, 964 F. Supp. 65, 69 (E.D.N.Y. 1997) (admission of uncharged crime evidence was harmless, "particularly since the prosecutor did nothing to emphasize or develop the statement either at the time it was made or thereafter").

Petitioner contends that the court improperly admitted evidence of petitioner's "involvement with drugs" and that this violated his right to due process. Petitioner did not raise this contention in Point I of his Appellate Division brief, which otherwise challenged the admission of uncharged crime evidence. Nor did petitioner assert this claim in any of his state collateral attacks on his judgment of conviction. The claim is arguably unexhausted. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732-33 (1999); *Grey v. Hoke*, 933 F.2d 117, 119-20 (2d Cir. 1991). Because this claim relies on facts appearing on the face of the record and because petitioner has had the one appeal to which he is entitled, petitioner may no longer raise the claim in state court. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). The claim is procedurally barred. *See Grey v. Hoke*, 933 F.2d at 120-21. Petitioner has not asserted any cause or prejudice that would excuse him from the effect of his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 485, 106 S. Ct. 2639, 2644 (1986). Nor has petitioner established that the failure to consider this claim would result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991).

The prosecution elicited the following testimony from Michelle Haile and Marie Somie concerning petitioner's contact with drugs: according to Haile, petitioner had told her that he and Graham had robbed the occupants of the Long Island house of a quantity of drugs, namely crack

and cocaine; she had seen this crack and cocaine when petitioner had brought the drugs to her mother's house; and petitioner had told her that 1) he had given the drugs to Bobby Graham to sell, 2) when he had asked Graham for the money, Graham had neither the money nor the drugs, and 3) he would therefore have to "eliminate" Graham. According to Somie, petitioner had told her that he and Bobby Graham had gone to a place on Long Island where the occupants sold drugs and they had robbed these people and taken, among other things, a garbage bag full of crack. Somie also testified that petitioner had told her that Bobby robbed him of some of these drugs and that he had decided to kill Bobby. The prosecution also elicited from Brenda Graham that, in late October 1986, she had come home from work one day to find her son, Bobby Graham, in possession of a lot of money and jewelry, and a package containing a white powdery substance.

Contrary to petitioner's persistent insinuation, the prosecution did not present evidence that petitioner was a drug dealer who regularly bought and sold drugs. Rather, all the testimony that the prosecution elicited about drugs concerned petitioner's connection to the specific drugs that he and Graham had stolen together in one incident. That evidence was relevant, because it was inextricably woven into the motive for petitioner's murder of Graham: it was because Graham had double-crossed petitioner and failed to give petitioner his share of the money acquired from the sale of the stolen drugs, that petitioner killed Graham. *See People v. Moore*, 213 A.D.2d 496, 624 N.Y.S.2d 621 (2d Dep't 1995) (defendant's involvement in sale of drugs was properly admitted to show his motive for killing victim, whom defendant believed had stolen money from defendant while selling drugs for him); *People v. Adams*, 198 A.D.2d 422, 603 N.Y.S.2d 900 (2d Dep't 1993) (evidence that defendant purchased and smoked crack during robbery spree was admissible because the evidence of the purchase and use of drugs was inextricably interwoven with the charged crime of robbery); *see generally People v. Crandall*, 67 N.Y.2d 111, 116, 500 N.Y.S.2d

635, 638 (1986) (uncharged crime evidence is admissible where it is inextricably interwoven with charged crime, i.e., where evidence is "explanatory of the acts done or words used in the otherwise admissible part of the evidence" (citation omitted)). Because the evidence about the drugs was relevant to an issue at trial, admission did not deprive defendant of his right to due process.

Petitioner also complains that evidence that petitioner had used drugs and that he had been in prison once before was improperly admitted in violation of his due process rights. In response to questions by defense counsel, Michelle Haile testified at trial that, following the Long Island robbery, petitioner had given her two vials of crack and that together they had sniffed and smoked some cocaine. Marie Somie, in response to a question by defense counsel about how it came to pass that petitioner told Somie that he had murdered Graham, testified, "He was just telling me a whole bunch of things about the things he's done since he's been out of jail." Thus, it was not the prosecutor who elicited this evidence at trial, but defense counsel. Petitioner has waived any objection to the propriety of its admission. The matter is not important enough to warrant a finding of attorney incompetence.

The testimony on the point was short and unsensational and was never exploited by the prosecutor. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (uncharged crime evidence regarding drug-trafficking represented only small fraction of testimony heard by jury and did not involve conduct any more sensational or disturbing than charged crimes, and accordingly evidence was not unduly prejudicial).

The trial court's limiting instructions with regard to the testimony about the robbery were sufficient. Any claim that the court erred in failing to provide more detailed instructions is waived. In its final charge to the jury, the court stated:

> I charge you that you may consider any evidence of a prior robbery
> only as it relates to motive for the present case and not for any other
> purpose.

Petitioner voiced no objection to the sufficiency of this final charge. He never asked the court to deliver any limiting instruction earlier in the trial during the testimony of Michelle Haile, Marie Somie, or Robert Graham.

Even assuming that the court should have delivered more extensive instructions, its failure to do so did not amount to a constitutional error. "'Questions concerning instructions are normally matters of state law and are not cognizable in federal habeas corpus review.'" Herrera v. Lacy, CV-94-0125 (CPS), 1995 U.S. Dist. LEXIS 21439, at *23 (quoting Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)). Since the court did issue an explicit and proper instruction that the "robbery" was only to be used as evidence of motive, there is no reason to assume that the jury would have construed "robbery" so narrowly as to exclude details from the scope of the court's instruction. In light of the overwhelming evidence of petitioner's guilt, any prejudicial effect from the absence of more extensive instructions was ephemeral and harmless. *See Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977) (noting that an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law).

The evidence in this case was compelling. Brenda and Robert Graham both testified that petitioner and Calvert "Bobby" Graham were together almost every day prior to Graham's murder. Brenda Graham also testified that sometime in mid-October 1986, she found Bobby Graham with a lot of money and jewelry, a big radio, and a package full of a white substance. When she confronted her son, Bobby Graham told his mother that he had taken the items from someone who owed him money. Robert Graham testified that about one week before November 6, 1986, he noticed that his brother Bobby had more jewelry and money than usual. Both Brenda and Robert

Graham testified that on the night of November 5, 1986, petitioner came to the Graham apartment. Robert Graham heard petitioner ask Bobby Graham, "Do you have the money?" to which Bobby Graham replied that he did not. Petitioner and Bobby Graham then left the apartment. Robert Graham never saw his brother again. Michelle Haile testified that just a few days before this, petitioner had told her that, because Bobby Graham had not given petitioner the money that he owed petitioner, he would have to "eliminate" Bobby.

On November 6, 1986, a police officer found Bobby Graham's body in an alley between President Street and Schenectady Avenue. Graham's penis was hanging outside his pants. There was an exit wound at the top of his head. When a doctor examined the body in the alley at about 2:50 p.m., the doctor determined that Graham had been dead about twelve hours. The autopsy revealed that Graham had been shot once in the back of the head, and the gun had been less than six inches away from his head.

This medical and physical evidence fully corroborated Haile's and Somie's testimony concerning defendant's admissions to them about his murder of Graham. Haile testified that in December 1986 petitioner had told her that he had killed Graham. He informed Haile that he had picked Graham up at Graham's apartment at night, had told him that they were going to get some money, and had driven around in a van. Petitioner told Haile, that when Bobby Graham had had to "take a leak," petitioner had come up behind him and shot him once in the back of the head in an alley between President Street and Schenectady Avenue. This account was similar to the one that Somie testified petitioner had related to her. Petitioner informed Somie that he had told Bobby that they were going to do a robbery, and they had eventually arrived in an alley somewhere in Brooklyn; when Bobby had turned around to urinate, petitioner had shot him once, in the back of the head. All the details that Haile and Somie knew about were corroborated by the testimony of

75

the Grahams and the police and medical evidence. This convergence lent a high degree of credibility to their testimony concerning petitioner's admissions to them.

In light of strong evidence of petitioner's guilt, any error regarding the admission of the uncharged crime evidence or regarding relevant instructions could not have had a substantial and injurious influence on the jury's verdict.

### C.    Ineffective Assistance of Trial Attorney

Petitioner's claim of ineffective assistance of his trial attorney is based on six alleged deficiencies. Trial counsel allegedly unjustifiably: 1) failed to prevent the admission of prejudicial uncharged crime evidence; 2) elicited damaging uncharged crime evidence and referred to that evidence in his summation; 3) failed to request limiting instructions concerning the jury's use of the uncharged crime evidence; 4) failed to cross-examine Marie Somie with portions of her audiotaped statement; 5) failed to draw the jury's attention to the allegedly "negligent" police investigation; and 6) failed to "investigate the Wilder/Sincere scenario." Whether or not the claim in its totality is procedurally barred from this court's review, it is meritless.

Petitioner, represented by Mr. Batchelder and Ms. Young, raised this same "six-deficiencies" claim in Supreme Court, Kings County, as the sole ground for his third C.P.L. § 440.10 motion to vacate his judgment of conviction under Kings County Indictment Number 6163/88. The state court denied petitioner's motion, finding the ineffective assistance of counsel claim barred from its review pursuant to Section 440.10(3)(c) of the New York Criminal Procedure Law (Decision, Order & Judgment at 1, 12-14). Section 440.10(3)(c) of the New York Criminal Procedure Law provides that a court may deny a C.P.L. § 440.10 motion to vacate a judgment of conviction when the petitioner could have raised the issue in a previous C.P.L. § 440.10 motion

and unjustifiably failed to do so. *See People v. Sanchez*, 212 A.D.2d 487, 488, 624 N.Y.S.2d 803, 803 (1995).

The state court's procedural reason for rejecting these claims is persuasive. Nevertheless this court prefers to go directly to the merits. The *Strickland* rule has already been discussed in connection with the Booker murder, *supra.*

### 1. General Competence

Trial counsel objected to the prosecutor's request to introduce evidence of the prior uncharged robbery, delivered an opening statement, registered appropriate objections during trial, cross-examined prosecution witnesses effectively, and forcefully commented on the evidence during summation. Thus, counsel's representation, on the whole, was professional and effective. Throughout his representation of petitioner, counsel pursued a legitimate trial strategy, and his performance never fell below an objective standard of reasonableness.

### 2. Argument Against Introduction of Uncharged Crime Evidence

During the pre-trial *Molineux* hearing, defense counsel vigorously argued against the prosecutor's proposed introduction of prior crimes evidence. Defense counsel not only contended that the admission of the uncharged Long Island robbery evidence by the prosecutor was highly prejudicial and potentially not even relevant, since there was no conclusive evidence that petitioner had participated in the Nassau County robbery, he also contended that the independent evidence of the robbery should be excluded because admitting it would essentially force the defense to "try two cases" at once. It is evident from the trial record that the court eventually agreed with defense counsel regarding the independent evidence of the robbery and precluded its introduction.

Defense counsel's success in persuading the court that independent evidence of the prior Long Island drug robbery should be precluded was an important victory, since it meant that the jury would have to rely exclusively on the testimony of Michelle Haile, Marie Somie, and Robert Graham—none of whom were actual victims or eye-witnesses. The fact that defense counsel was unsuccessful in also convincing the trial court to preclude even these three witnesses from testifying about the robbery and about the drugs stolen during the course of the robbery cannot be held against counsel, since the court correctly ruled that this evidence was relevant and admissible.

### 3. Strategy

The trial court's *Molineux* ruling colored the strategy that defense counsel chose to follow for the remainder of the trial. Because the motive evidence was going to be admitted through the testimony of those prosecution witnesses who would be asserting that petitioner had confessed the Graham murder, defense counsel appropriately attempted to discredit these sources. He faced an uphill battle, explaining the suggestion that somehow the three witnesses had ineptly conspired to frame petitioner, but an agreement to harm petitioner among these witnesses, all of whom nursed grievances against petitioner, was not beyond the realm of possibility.

The course defense counsel pursued was reasonable under the circumstances. He consistently followed it. That this strategy was ultimately unsuccessful, or even that it might not have been the best trial strategy is immaterial. *See People v. Satterfield*, 66 N.Y.2d 796, 799-800, 497 N.Y.S.2d 903, 906 (1985) ("It is not for this court to second-guess whether a course chosen by defendant's counsel was the best trial strategy, or even a good one, so long as defendant was afforded meaningful representation.").

78

During his cross-examination of the prosecution witnesses, defense counsel elicited facts which had the potential for making the jury doubt the witnesses' reliability and credibility. This material was well used in his closing argument.

Putting to use the information that he had elicited in strong and effective cross-examination, defense counsel argued on summation that both Michelle Haile and Marie Somie were unreliable witnesses and, as former girlfriends of petitioner, both had motives for falsely pinning the Graham murder on petitioner.

### 4. Failure to Move to Strike Testimony Respecting Prior Incarceration

Petitioner contends that counsel should have moved to strike Somie's mention of defendant's having been in jail. Rather than moving to strike the testimony and thereby drawing the jury's attention to this brief portion of one of Somie's answers on cross-examination, it made sense for him to remain silent and hope the jury had missed the allusion. Had counsel later moved to strike the testimony when the jury, in one of its notes, asked whether the testimony had been stricken the motion would have been denied because the record could not be changed. He could have asked the trial court to give the jury some special instructions regarding the testimony, but that would have highlighted the matter and possibly suggested that petitioner had something to hide. The testimony was only minimally prejudicial. The prosecution witnesses, as well as the murder victim, with whom petitioner had consorted, were all rather unsavory characters.

### 5. Failure to Request Curative Instructions

Petitioner complains that defense counsel's representation was deficient because counsel "failed to request any curative instructions and the Trial Court failed to provide them." Defense

counsel did request that the trial court, as part of its final charge, deliver a limiting instruction regarding the jury's use of the evidence of the prior uncharged Long Island robbery. The court issued a clear instruction that the jurors were to consider any evidence of a prior robbery only as it related "to motive for the present case and not for any other purpose." Counsel could have concluded that such an unequivocal charge was sufficient to protect his client from the jury's misuse of such evidence.

### 6. Waiver as to Uncharged Crimes

Petitioner contends that his trial counsel "waive[d] reversible error" with regard to the uncharged crimes evidence. The Appellate Division in this case unambiguously stated, "We reject the defendant's contention that the introduction of evidence of uncharged crimes constituted reversible error." *People v. Young*, 187 A.D.2d at 548, 590 N.Y.S.2d at 756. In light of the strong evidence of petitioner's guilt, even if trial counsel had successfully opposed the admission of some of the uncharged crimes evidence, it was highly probable that the jury would nevertheless have returned a verdict of guilty.

### 7. Failure to Cross-Examine

Petitioner asserts that trial counsel erred by failing to cross-examine Marie Somie using her allegedly prior inconsistent audiotaped statement. Somie stated during the audiotaped interview that petitioner had told her that he and "Bobby" had robbed some drug dealers and had also told her that after the robbery, "they [petitioner and Bobby] had a disagreement about a chain and Bobby robbed him of some of—it was supposed to be split evenly, the crack and Bobby robbed him of some."

Somie did not state in the audiotaped interview that the motive for killing Bobby Graham was "mostly" a dispute about a gold chain, as defendant now argues. Rather, she stated that the motive for the murder was related to the splitting of the crack—a statement that was consistent with her testimony at trial. She also stated during her audiotaped interview that petitioner had told her that he had used a van to get to the drug dealers' house and that petitioner had never specified to her where the robbery had taken place. Her statements were not clearly inconsistent with her trial testimony that petitioner had told her that the robbery had taken place on Long Island. At the audiotaped interview, Somie might have misunderstood the assistant district attorney to be asking her whether petitioner had told her the specific address or location of the robbery. Any inconsistency between Somie's trial testimony and her audiotaped statement was minor. It was not unreasonable for counsel to have refrained from cross-examining her in this regard since it would have emphasized a prior consistency.

### 8.   Failure to Challenge Inadequate Police Investigation

Petitioner argues that his trial counsel rendered ineffective assistance because he unjustifiably failed "to challenge the police investigation of other suspects as inadequate." The claim is meritless.

Nothing in any of the materials or affidavits that defendant provided to this court or to the state court with his third C.P.L. § 440.10 motion furnishes any basis for drawing such a conclusion. Contrary to petitioner's assertion, there were no "lapses" in the investigation. The detectives did adequately follow up all leads.

Petitioner contends that the police unreasonably released a credible suspect for the shooting—Demengious Allen. Allen had been accused by one Wilder. The police knew that they

81

could not hold Allen and prosecute him without Wilder's testimony. A few days after Allen's release, Allen's lawyer called the police station and left his telephone number. If necessary, the police could have relocated Allen. Meanwhile, the police made serious unsuccessful efforts to find Wilder. They were not obligated to expend more resources on searching for Wilder, whom they had good reason to suspect had lied to them about seeing "Sincere" (Allen) commit the crime.

The police's eventual arrest of petitioner was supported by probable cause. At trial, the State proved their case against petitioner by overwhelming evidence and the jury found petitioner guilty beyond a reasonable doubt. Petitioner has failed to offer any credible evidence either that any of the State's witnesses at trial gave false testimony or that petitioner is innocent of the murder of Bobby Graham. There is no evidence that the police tried to frame petitioner and no credible evidence that someone other than petitioner was the shooter. Petitioner's accusation that the police's investigation was negligent or conducted in bad faith is baseless.

Petitioner fails to explain how trial counsel was supposed to "challenge the police investigation of other suspects as inadequate." The issue to be decided at petitioner's trial was whether he had murdered Calvert "Bobby" Graham. It is unclear how defense counsel—as petitioner now suggests—could have successfully posed questions to Detective Long, the only police witness called by the State. Detective Long would have been free to explain why the police had focused on petitioner—a known drug dealer with a violent past. The detective could have also provided information (such as the fact that victims of the Long Island robbery had identified petitioner, from a photographic array, as one of the perpetrators of the robbery) that would have served to corroborate Haile's, Somie's, and Robert Graham's testimony and to undermine defense counsel's strategy. Had defense counsel questioned Detective Long about details of the police investigation, Detective Long might well have revealed that the police had determined that

petitioner knew the victim—further corroboration of Haile's testimony. Any attempt that defense counsel might have made to question Detective Long about Harrison Wilder's allegations, assuming that such questions would have been allowed by the trial court, could have backfired.

### 9.    Failure to Investigate Claim Another Person was Perpetrator

Petitioner claims that defense counsel deprived him of effective assistance when he unjustifiably failed "to investigate the Wilder/Sincere scenario" himself. The contention is without foundation.

He bases his allegation principally on the affidavit of the investigator, Roland Thomas, and on the statements in his own affidavit. According to Thomas's affidavit, defense counsel recently informed Thomas that he no longer had any files on this case, that he could not recall anything about another suspect being arrested for Bobby Graham's murder, and that he could not recall the trial in this case. According to Thomas, Robert Holt, the investigator that counsel told Thomas he might possibly have used as an investigator on petitioner's case, stated to Thomas that he did not have any files on this matter. There is no proof that counsel or another of his investigators did not pursue this issue. The hearing in this court demonstrated that it was highly probable that defense counsel did investigate properly. *See* Part IV, *supra*.

### 10.    Failure to Prepare and Consult with Petitioner

Petitioner now alleges in his affidavit that he met with defense counsel only a few times and "never discussed [his] case in much detail." In view of the way the case was conducted this contention is not believable. Counsel reasonably could have concluded on the evidence available that, just as the prosecutor apparently suspected, petitioner had enlisted Wilder to spin a tale for the

police about Demengious "Sincere" Allen in order to deflect the police investigation away from petitioner and then to disappear. It would not necessarily have been in petitioner's best interest for Harrison Wilder to be found.

According to an affidavit, Demengious Allen's mother stated that the last time she heard from or saw her son was on or about 1987. Thus, if defense counsel had looked for Allen in 1989, at the time of petitioner's trial, it is likely that he would not have succeeded in finding him. In light of the fact that the police and the prosecutor conducted an extensive search for Harrison Wilder and were themselves unable to locate him, it is highly unlikely that defense counsel would have had any greater success in finding Wilder prior to petitioner's trial.

Petitioner has failed to show that defense counsel's decision not to cross-examine Detective Long regarding the arrest of Demengious Allen and his decision not to otherwise bring up at trial Harrison Wilder's accusation of Demengious Allen were decisions that were in any way unreasonable.

Prior to Detective Long's testimony, the prosecutor made a motion in limine requesting that the trial court prohibit defense counsel from questioning Detective Long, who had never spoken to Harrison Wilder and who had not been in charge of arresting Demengious Allen, about Wilder's statements to the police or about Allen's arrest. The prosecutor argued that it would be hearsay to allow the detective to talk about what someone else had said and that the fact that someone else had been arrested, in and of itself, had no probative value. The trial court asked defense counsel for his views and counsel replied, as already pointed out:

> Your Honor, I have in my possession already for quite sometime the name of the person who was arrested for the murder of the deceased in this case, and that he was released. Also, all the DD5's, police reports, in which they are looking for the alleged perpetrator of that crime, a man by the name of "Sincere." Although I would have

> liked to question this officer on anything with regard to the other arrest, *I spoke with my client and as a trial tactic I'm not going to ask any questions of this detective with respect to the other arrest they had made. Let the record indicate though, it is the defense trial tactic.*

(emphasis supplied).

This passage establishes that defense counsel rationally decided not to cross-examine the detective about "anything" regarding the arrest of Allen, which presumably included Wilder's accusation of Allen, because counsel had concluded after speaking with petitioner that it would not be in the defense's best interest to broach the subject. The evidentiary hearing in this court established the likelihood that petitioner had concurred in this tactical decision. *See* Part IV, *supra.*

The reasonable inference from defense counsel's statement was that he had learned something which suggested that it would be harmful to the defense to open the door on the subject of Wilder's accusation and Allen's arrest. The prosecutor, at the *Molineux* hearing, had clearly stated that it was the prosecution's belief that Wilder was petitioner's agent, sent to the police with the accusation against Allen for the specific purpose of deflecting the police investigation away from petitioner.

The Wilder matter is smoke without fire. It has no bearing on any constitutional issue.

### D. *Rosario* and *Brady* Failures

Petitioner claims that his due process right to a fair trial was violated by the State's alleged failure to provide material pursuant to their obligations under *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961), and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). He identifies three documents, which he attaches to his pro se petition as Petitioner's Exhibits A, E and F, as the ones which the State should have disclosed to him at trial but did not.

He raised the same *Rosario* and *Brady* violations claim in his first two C.P.L. § 440.10 motions: the first motion dated March 26, 1993 and the second dated July 22, 1994. The 1993 motion concerned the document that petitioner now attaches as Petitioner's Exhibit A. The 1994 motion concerned the documents that petitioner now attaches as Petitioner's Exhibits E and F. The Supreme Court denied both motions. It found that petitioner's claim regarding Petitioner's Exhibit F was barred from collateral review based on a state procedural rule. Thus, petitioner's present claim concerning this document would be barred from this court's federal habeas review. In any event, it found the claim with respect to all three documents was meritless. Because petitioner failed to demonstrate that the New York Supreme Court's adjudication of these claims resulted in a decision that either was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, *see* 28 U.S.C. § 2254(d)(2), or was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, *see* 28 U.S.C. § 2254(d)(1), his request for habeas corpus relief, insofar as it is based on this due process claim, is denied.

### 1.    Exhibit A

In his application, petitioner claims that the State failed to disclose to him at trial a Homicide Bureau Information Sheet, Petitioner's Exhibit A, and that this nondisclosure violated the rules of *People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448 (1961), and *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). This is similar to the claim that petitioner raised in his 1993 C.P.L. § 440.10 motion, except that in that motion, petitioner did not specifically discuss *Brady v. Maryland*, but rather argued that the document was newly discovered evidence and was *Rosario* material, and that its nondisclosure had deprived him of a fair trial. The Supreme Court did not

decide whether Exhibit A had been disclosed to petitioner at trial because it concluded that, even assuming that the sheet had not been disclosed, the nondisclosure did not present a basis for vacating petitioner's judgment of conviction. The court found that the sheet was not *Rosario* material and was not newly discovered evidence, and that, in any event, there was no reasonable possibility that but for the failure to disclose the sheet the verdict would have been different.

Insofar as petitioner is now raising before this court the same claim of a *Rosario* violation that he raised before the state court, that claim is not cognizable. *See Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995). The claim is based on the purported violation of *Rosario* and codified in Section 240.45(1)(a) in the New York Criminal Procedure Law. That statutory disclosure rule is broader than its federal counterpart, the Jencks Act, *see* 18 U.S.C. § 3500, and is not of constitutional dimension. *See United States ex rel. Butler v. Schubin*, 376 F. Supp. 1241, 1247 (S.D.N.Y. 1974), *aff'd without op.*, 508 F.2d 837 (2d Cir. 1975). Accordingly, even if it were true that the State had failed to meet the requirements of the *Rosario* rule, that failure would not entitle petitioner to relief in this Court. *See* 28 U.S.C. § 2254(a).

Insofar as petitioner is raising a claim that Exhibit A constituted *Brady* material and he was deprived of due process by the State's purported failure to disclose it at trial, the claim does not present any ground for habeas relief.

The prosecution has an obligation to disclose to the petitioner material evidence that is arguably favorable to the defense, including impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985); *Brady v. Maryland, supra*; *Tankleff v. Senkowski*, 135 F.3d 235, 250 (2d Cir. 1998). Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383; *Tinsley v. Kuhlmann*, 973 F.2d 163,

166 (2d Cir. 1992), *cert. denied*, 506 U.S. 1081, 113 S. Ct. 1050 (1993). "A reasonable probability of a different result is accordingly shown when the Government's evidentiary suppression undermines the confidence in the outcome of the trial." *United States v. Gonzalez*, 110 F.3d 936, 943-44 (2d Cir. 1997) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995) (internal quotations omitted)).

The first paragraph of the Homicide Bureau Information Sheet simply recites information that was obviously known to petitioner at trial—the location where and date when the victim was found, the victim's identity, and the fact that the victim had a bullet wound in the back of the head. The second and third paragraphs of the sheet reflect an assistant district attorney's summary of an audiotaped statement given by Marie Somie to the prosecution. Petitioner received the audiotaped statement at trial so that the information in the assistant district attorney's summary was merely "cumulative and repetitive of material already in petitioner's possession" (Memorandum Decision and Order at 4). The fifth paragraph of the sheet contains a detective's relation of a statement made by the victim's mother; the information is consistent with her testimony at trial and with that contained in other material disclosed to petitioner prior to trial.

The fourth paragraph of the sheet, and the one upon which petitioner focuses attention, summarizes information that Detective Burberich provided to the prosecution. According to the sheet, the detective stated that the robbery had occurred October 25, 1986 in Manhasset, New York; that the victims were drug dealers; that Bobby Graham had been identified as one of the perpetrators; and that a dog had been stabbed during the robbery. All this information was consistent with the account of the robbery that, according to the testimony of Robert Graham, Michelle Haile, and Marie Somie, petitioner had communicated to them. Petitioner makes much of the fact that the detective also informed the prosecution that "nobody was killed" during the

robbery and petitioner argues that this was material impeachment evidence against Marie Somie.

The detective's statement that "nobody was *killed*" (emphasis supplied) was not inconsistent with Somie's testimony that petitioner had "shot" two or three people. At trial, Somie was testifying about what petitioner had communicated to her about the Long Island robbery. A statement by Detective Burberich, who did not testify at trial, concerning what he believed had actually occurred during that robbery could not be used during cross-examination to impeach Somie's testimony concerning petitioner's admission. Nothing contained in this fourth paragraph of the sheet would have provided significant impeachment evidence of Somie's credibility.

The contents of the fourth paragraph did not constitute "material" evidence. As one court has explained:

> Impeachment evidence is material where the witness whose credibility is at issue supplied the primary evidence linking the petitioner to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case.

*Orena v. United States*, 956 F. Supp. 1071, 1106 (E.D.N.Y. 1997) (citations and quotation marks omitted). In this case, ample proof of petitioner's guilt was provided by the testimony of the Grahams and Michelle Haile and the physical and medical evidence; Somie did not provide the "primary evidence" linking petitioner to the crime. Nor would impeachment with the detective's statement have an impact on Somie's credibility sufficient to undermine some critical element of the prosecution's case.

In short, petitioner has failed to carry his burden of demonstrating that, but for the alleged nondisclosure of Petitioner's Exhibit A there is a reasonable probability that the verdict would have been different. The Supreme Court, applying the even more lenient (for petitioner) "reasonable

89

possibility" standard, concluded that the verdict would have been no different even if the sheet had been turned over (Memorandum Decision and Order at 4-5).

### 2. Exhibit E

Petitioner also claims that the State violated its disclosure obligations under *Rosario* and *Brady* by failing to provide him with an alleged Homicide Bureau Information Sheet, which he attaches to his pro se petition as Petitioner's Exhibit E. Insofar as petitioner is raising before this Court a pure claim of a *Rosario* violation, that claim is not cognizable in a federal writ of habeas corpus. *See Morrison v. McClellan*, 903 F. Supp. 428, 429 (E.D.N.Y. 1995). It cannot alone or with other claimed errors provide a basis for federal habeas relief. Insofar as petitioner is raising a *Brady* claim with regard to Exhibit E, the claim is meritless.

Petitioner raised this *Rosario/Brady* claim in state court in his 1994 C.P.L. § 440.10 motion. He made a similar claim based on this same document in a C.P.L. § 440.10 motion attacking his murder conviction (the Booker murder) under Kings County Indictment Number 8459/87. In both C.P.L. § 440.10 motions, petitioner claimed that he had received the document after trial from the District Attorney's Office in response to one of his Freedom of Information Law ("FOIL") requests. *See* N.Y. Public Officers Law §§ 84 *et seq.* The State contested the truth of these allegations. A hearing was held in the Supreme Court to determine whether the document was authentic and whether it had ever been in the State's possession and had been provided to petitioner in response to a FOIL request.

Petitioner was represented by two attorneys, one on Indictment 6163/88 and one on Indictment 8459/87. After an extensive hearing at which petitioner testified on his own behalf and the assistant district attorney in charge of responding to petitioner's FOIL requests testified for the

prosecution, the Supreme Court issued a written decision. Citing the "completely credible" testimony of the assistant district attorney, the court concluded that Exhibit E was "a forged and non-authentic document which was never withheld from petitioner at any time as it never existed until fraudulently produced." Another Justice subsequently reviewed the hearing minutes, adopted these findings of fact with respect to the document, and denied petitioner's 1994 C.P.L. § 440.10 motion insofar as the motion relied on the claim that the document had been improperly withheld from petitioner at trial.

The factual findings of the State are entitled to a presumption of correctness, and should not be disturbed by this court. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 101 S. Ct. 764 (1981). The hearing record supports the conclusion that the document is not authentic, that the State never had the document in its possession at trial and that the State never provided the document to petitioner in response to any FOIL request.

Because the State had good reason to concluded that Exhibit E was a forged and non-authentic document that had never been withheld from petitioner by the State, petitioner's *Brady* claim, insofar as it rests on this document, is rejected.


### 3.  Exhibit F

The Supreme Court found that petitioner's claim regarding Petitioner's Exhibit F was barred from review based on a state procedural provision, Section 440.10(3)(a) of the New York Criminal Procedural Law. That rule provides that a court may deny a motion to vacate judgment if facts in support of the claim raised in the motion could, with due diligence by the petitioner, have been made to appear on the record in a manner providing an adequate basis for review on direct appeal, and the petitioner unjustifiably failed to do so. N.Y. Crim. Proc. Law § 440.10(3)(a); *see*

*People v. Donovon*, 107 A.D.2d 433, 442-44, 487 N.Y.S.2d 345, 352-53 (2d Dep't 1985); *People v. Lanahan*, 96 A.D.2d 675, 676-77, 466 N.Y.S.2d 796, 798 (3d Dep't 1983).

Since the State invoked a state procedural bar to the review of the merits of petitioner's claim—an independent and adequate state ground—this court will not review the merits of petitioner's claims. There is no adequate cause for the procedural default, no actual prejudice resulting from the default, and no fundamental miscarriage of justice would result if the claim were not considered.

The claim is meritless. Even assuming that the State did not provide petitioner at trial with Exhibit F, nondisclosure did not constitute a *Brady* violation. Petitioner errs in assuming that the sentence, "[Petitioner] shot deceased in back of head," which appears on the sheet was part of the sworn statement of the interviewed individual. This sentence concludes the first paragraph of the Homicide Bureau Information Sheet and is not part of the summary of the individual's "Sworn Statement." The assistant district attorney who wrote the text of the Homicide Bureau Information Sheet is likely to have gleaned the information about how the deceased had been shot from documents in the case file, such as the autopsy report or crime scene reports, or from speaking with detectives. The fact that the deceased was shot in the back of the head is consistent with the evidence that was presented at trial. Petitioner fails to explain how such information would have been exculpatory. Furthermore, the "DD-5" police report, that petitioner has conceded he received at trial, reflects a more detailed account of the November 24th interview with the individual than does the Homicide Bureau Information Sheet. Thus, petitioner was fully aware at trial of any potentially exculpatory information that this individual could provide. He has failed to explain in what way the allegedly undisclosed Exhibit F contained additional material exculpatory information which was unjustifiably withheld and which might have resulted in a different verdict.

Because the Supreme Court's decision reflected a reasonable determination of the facts and a reasonable application of federal law, petitioner's *Brady* claim does not present any ground for the granting of federal habeas relief.

### E.     Ineffective Appellate Counsel

Petitioner claims that he was denied the effective assistance of appellate counsel. He raised a similar claim, citing two alleged deficiencies in appellate counsel's representation, before the Appellate Division in his first state petition for a writ of error coram nobis. The Appellate Division concluded that the claim was meritless. *People v. Young*, 244 A.D.2d 441, 665 N.Y.S.2d 557 (2d Dep't 1997). In a second state petition for a writ of error coram nobis, he again raised a claim of ineffective assistance of appellate counsel, this time citing an additional deficiency. The Appellate Division again concluded that the claim was meritless. *People v. Young*, 16 A.D.3d 527, 792 N.Y.S.2d 510 (2d Dep't 2005).

Because petitioner fails to demonstrate that the Appellate Division's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, his request for habeas corpus relief, insofar as it rests on this claim, should be denied. *See* 28 U.S.C. § 2254(d)(1). In order to establish ineffective assistance of appellate counsel, a petitioner has the burden of demonstrating that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the outcome of the proceeding would have been different but for counsel's alleged error. *Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir. 1995) (citing *Abdurraham v. Henderson*, 897 F.2d 71, 74 (2d Cir. 1990)); *see generally Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984). An

appellate attorney need not advance every nonfrivolous argument without regard to its relative merit. *See Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830 (1985); *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct. 3308 (1983). "A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones*, 463 U.S. at 753, 103 S. Ct. at 3313.

Petitioner asserts that appellate counsel from The Legal Aid Society should have 1) raised before the Appellate Division a claim that, as a result of a violation of the notice provisions of Section 190.50 of the New York Criminal Procedure Law ("C.P.L. § 190.50"), petitioner was denied his right to testify at the grand jury and 2) should have incorporated into the claim of ineffective assistance of trial counsel that she did raise before the Appellate Division, the claim that trial counsel was ineffective i) for not using grand jury testimony to cross-examine the prosecution witnesses, Brenda Graham and Robert Graham; ii) for failing to investigate, explore, or pursue Harrison Wilder's implication of "Sincere" in the murder of Bobby Graham; and iii) for failing to "use exculpatory material" and draw the jury's attention to the allegedly "negligent" police investigation.

Appellate counsel's conduct was within the appropriate range of professionally competent assistance. She filed a thirty-page brief, cogently summarizing the facts of the case, and argued for the reversal of petitioner's judgment of conviction on two different grounds: the allegedly improper admission of uncharged crimes evidence and ineffective assistance of trial counsel. Appellate counsel cited over twenty-five applicable state and federal cases in support of her arguments. Since appellate counsel capably presented these non-frivolous issues to the court, petitioner received effective representation on appeal. *See Blake v. Leonardo*, 710 F. Supp. 446, 449 (E.D.N.Y. 1989) (noting that, even if unraised claims had some merit, petitioner's charge of

ineffective assistance of appellate counsel would fail, because appellate counsel's brief was well within objective standard of reasonableness).

### 1.     Denial of Right to Testify Before Grand Jury

Petitioner now contends that his appellate counsel unjustifiably failed to raise on appeal a claim that petitioner was denied his right to testify at the grand jury because the State had failed to give petitioner notice that he could testify. (Pro Se 1998 Memo. at 24.)  This claim is meritless. Appellate counsel cannot be criticized for failing to raise such a claim on appeal. *See Clark v. Stimson*, 214 F.3d 315, 322 (2d Cir. 2000) (to prevail on claim of ineffective assistance of appellate counsel, petitioner must show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker" (citation omitted)).

In this case, petitioner was never charged by a felony complaint with the murder of Calvert "Bobby" Graham; he was arrested upon the filing of Kings County Indictment Number 6163/88, while he was incarcerated on a separate indictment, Kings County Indictment Number 8459/87, charging him with the Andre Booker murder.

Section 190.50(5)(a) of the New York Criminal Procedure Law provides in part that:

> The district attorney is not obliged to inform [a defendant] that such
> a grand jury proceeding against him is pending, in progress or about
> to occur *unless* such person is a defendant who has been arraigned in
> a local criminal court upon a currently undisposed of felony
> complaint charging an offense which is a subject of the prospective
> or pending grand jury proceeding.

(emphasis supplied).  Because petitioner had not been arraigned in a local criminal court upon an active felony complaint charging an offense which was the subject of the prospective or pending grand jury proceeding in this case, the State had no obligation to inform petitioner that such a

95

grand jury proceeding was pending against him and no obligation to accord him an opportunity to testify. *See* N.Y. Crim. Proc. Law § 190.50(5)(a); *People v. Muñoz*, 207 A.D.2d 418, 418-19, 615 N.Y.S.2d 730, 731 (2d Dep't 1994).

Petitioner also appears to suggest that appellate counsel should have raised a claim that petitioner received ineffective assistance of trial counsel because trial counsel incorrectly informed petitioner that he could not testify before the grand jury since the indictment had been voted. Because this claim relies on facts that are off the record, appellate counsel cannot be faulted for having failed to raise this claim on direct appeal. *See People v. Robinson*, 159 A.D.2d 598, 598, 552 N.Y.S.2d 457, 458 (2d Dep't 1990) (appellate review of claim is precluded, because claim relies on facts *dehors* the record); *People v. Donovon*, 107 A.D.2d 433, 440-42, 487 N.Y.S.2d 345, 351-52 (2d Dep't 1985) (record does not contain facts sufficient to permit appellate review of claim).

Petitioner alleges that on July 12, 1988 Assistant District Attorney Robert Slevin announced in court that an indictment had been voted against petitioner and that he would be arrested on that indictment in the near future; petitioner relies on a police report as evidence corroborating this allegation. He further alleges that 1) the prosecutor then asked petitioner whether he wished to testify before the grand jury, 2) petitioner expressed his desire to do so to his attorney, and 3) trial counsel informed petitioner that "it would do no good" as the indictment had already been voted. He offers no evidence supporting these allegations. There is no reason to believe that they are true. It would be highly unusual if any of the conversations that petitioner might have had with his trial counsel would be reflected in the record. Because appellate counsel could only raise on direct appeal a claim of ineffective assistance of trial counsel that was based on on-the-record facts, appellate counsel acted entirely reasonably in not raising a claim that trial

counsel was ineffective for having allegedly informed petitioner that "it would do no good" to testify at the grand jury.

Given that petitioner has failed to show either that this was poor advice or that the outcome of the grand jury action or trial would have been different but for trial counsel's advice, he has failed to establish that, had appellate counsel raised such an ineffective assistance of trial counsel claim in her brief, the claim might have prevailed on appeal.

## 2. Failure to Cross-Examine Witnesses Using Grand Jury Testimony

Petitioner faults his appellate attorney for failing to incorporate into the ineffective assistance of trial counsel a point that she did raise in her brief—an argument that trial counsel unjustifiably failed to cross-examine two of the prosecution witnesses with their grand jury testimony. The claim is meritless.

First, the grand jury testimony was off the record, and thus, appellate counsel could not refer to it in support of her ineffective assistance of trial counsel claim. Even assuming that the grand jury testimony was considered on the record, reference to the testimony would not have significantly bolstered appellate counsel's ineffective assistance of trial counsel claim.

Trial counsel would have gained little by impeaching Brenda and Robert Graham with their grand jury testimony about the date of the last time that they had seen the victim—November 5 or 6, 1986. The fact that the prosecutor misspoke at the grand jury proceedings, which took place about one and one-half years after the crime, and that the witnesses did not correct him, was not significant. In an earlier police interview, recounted in a "DD-5," both Brenda and Robert Graham had stated that they had last seen the victim the night before the day that they learned of his death. Had defense counsel at trial tried to impeach the witnesses with their grand jury testimony, the

97

prosecutor would have easily been able to rehabilitate them with their earlier statements to the police.

Because trial counsel's strategic decision not to use the grand jury testimony to try to impeach the witnesses is the kind of trial tactic that an appellate court would not second-guess, appellate counsel cannot be criticized for not making such an argument in her brief.


### 3.    Failure to Utilize Phantom Murderer Theory

Petitioner also criticizes his appellate attorney for failing to incorporate into the ineffective assistance of trial counsel another point that appellate counsel raised in her brief, an argument that trial counsel unjustifiably failed to "investigate, explore or pursue" exculpatory leads regarding Harrison Wilder's accusation of Sincere (Demengious Allen) as Bobby Graham's killer. Petitioner also claims that appellate counsel should have argued that trial counsel was ineffective for not using "exculpatory materials" and for failing to "challenge the police investigation," which, petitioner asserts, was conducted in bad faith.

All of these criticisms of trial counsel rely, in large measure, on the police reports and Homicide Bureau Information Sheets generated in petitioner's case, the bulk of which were not part of the record on appeal. They also rest on other off-the-record allegations. Because such a claim of ineffective assistance of trial counsel, incorporating these new criticisms, would have required reference to off-the-record matters, the claim would not have been reviewed by the Appellate Division on direct appeal.

Appellate counsel properly refrained from incorporating into her ineffective assistance of trial counsel claim criticisms of trial counsel's performance that would have required reference to

off-the-record matters.  Even if appellate counsel had incorporated all of the criticisms that defendant now cites into her ineffective assistance of trial counsel claim, the claim still would not have prevailed in this court, because appellate counsel would not have been able to demonstrate that trial counsel's representation had been less than appropriate.

Petitioner has failed to demonstrate that his C.P.L. § 190.50 and ineffective assistance of trial counsel claims presented "significant and obvious" issues and has failed to demonstrate that those claims which were advanced by appellate counsel were "clearly and significantly weaker" than those claims petitioner now proposes should have been raised.  *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  He has failed to establish that the state court's rejection of his ineffective assistance of appellate counsel claim involved an unreasonable determination of the facts or an unreasonable application of federal law.

### F.    Other Possible Claims

No other possible claim has any merit.  None would support, alone or with any or all prior claims discussed, a showing of constitutional violation.  The petitioner had a fair trial with adequate trial and appellate counsel.

### X.    Conclusion

The consolidated petition for a writ of habeas corpus is denied.

A certificate of appealability is granted in the Booker murder case on the issue of whether an accomplice charge should have been given.  *See* Part VIII.A., *supra*.  A certificate of

99

appealability is granted in the Graham murder case on the use of details of the uncharged robbery and other bad acts. *See* Parts IX.A., IX.B., IX.C(2), IX.C(4), *supra*.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: February 1, 2006
        Brooklyn, New York

100